[Nos. 24609-7-I; 25767-6-I.   Division One.   September 3, 1991.]

THE STATE OF WASHINGTON, *Respondent*, v. TONY ANTHONY CURRY, *Appellant*.

THE STATE OF WASHINGTON, *Respondent*, v. ANTONIO LOPEZ,[†] *Appellant*.

---

†This record contains several different versions of appellant's last name, including Lopez Lopez, Lopez-Lopez, and simply Lopez. We use Lopez in this opinion.

*Elaine Winters* of *Washington Appellate Defender Association,* for appellants.

*Norm Maleng, Prosecuting Attorney,* and *Lisa Marchese* and *Pamela Mohr, Deputies,* for respondent.

PEKELIS, J. — The principal issue in these cases, consolidated on appeal, is whether constitutional considerations require the entry of formal findings of fact to support the imposition of court costs and the victim's penalty assessment (VPA). A secondary and related issue is whether the sentencing judges in both Curry's and Lopez's cases implicitly found that the defendants were unable in the present or in the future to make these payments. We answer both questions in the negative and affirm.

I

On July 25, 1989, Tony Curry was sentenced to 6 months' confinement with credit for time served and 12

months' community supervision. The trial court waived recoupment of attorney fees, as defense counsel had requested, and also waived the monthly supervision fee. Here, the trial court assessed $168 in court costs and the $70 VPA, to be paid on a schedule established by the community corrections officer. On August 21, 1989, a different trial judge entered an order allowing Curry an appeal in forma pauperis.

On February 26, 1990, Lopez was sentenced to 41 months' confinement in the Department of Corrections with credit for 25 days served. The trial court also ordered community supervision. At the sentencing hearing, defense counsel requested that

all fines except the mandatory ones, of course, not be imposed on [Lopez]. Mr. [Lopez] is indigent. He does work as a construction worker when he is not in custody. He is attempting to learn English. Placing large monetary obligations upon him at this time would not be beneficial to either the state or Mr. [Lopez].

The trial court waived recoupment of attorney fees, clerk's trust fund fees, and King County Interlocal Drug Fund fees. However, the court ordered Lopez to pay $362.50 in court costs and the $100 VPA. On March 1, 1989, the same judge granted Lopez's motion for appeal in forma pauperis.

On appeal, Curry and Lopez (hereinafter appellants) assign error to the trial courts' failure to enter findings of fact regarding their present or future ability to pay these financial obligations. The appellants allege, in the alternative, that the trial courts impliedly concluded that they were *not* able to pay court costs and the VPA. Therefore, they contend that the imposition of financial obligations should be stricken.

## II

The State makes the threshold argument that by not objecting below, the appellants failed to preserve their claims on appeal. Appellants concede that they did not object to the imposition of financial obligations or request

the entry of findings. However, they assert that the sentencing courts' failure to enter findings on their ability to pay is an error of constitutional magnitude which can be raised for the first time on appeal. *See* RAP 2.5(a)(3); *State v. Scott*, 110 Wn.2d 682, 686, 757 P.2d 492 (1988). Specifically, the appellants assert that the absence of findings violates their right to equal protection, their right to counsel, and creates the possibility of incarceration for nonpayment, which violates the Thirteenth Amendment.

▮ Without deciding whether the asserted errors are truly of constitutional magnitude, we exercise our discretion under RAP 2.5(a) by accepting review of appellants' claims. *See State v. Noel*, 51 Wn. App. 436, 439, 753 P.2d 1017, *review denied*, 111 Wn.2d 1003 (1988). As demonstrated by our having rejected the State's original concession of error and ordering additional briefing from the parties, we are eager to address these frequently raised, but as yet unresolved, issues. We therefore consider appellants' challenge to these assessments.

## III

We note first that in both their opening and supplemental briefs, appellants make no distinction between the various types of financial assessments permitted under our statutes. However, since we perceive the assessments challenged here as raising their own distinct potential problems, we address them separately.

Each of the appellants was ordered to pay court costs pursuant to RCW 10.01.160.[1] On its face, this statute contains significant constitutional safeguards. *See generally*

---

[1] Former RCW 10.01.160 states, in relevant part:

"(1) The court may require a convicted defendant to pay costs.

". . . .

"(3) The court shall not sentence a defendant to pay costs unless the defendant is or will be able to pay them. In determining the amount and method of payment of costs, the court shall take account of the financial resources of the defendant and the nature of the burden that payment of costs will impose.

"(4) A defendant who has been sentenced to pay costs and who is not in contumacious default in the payment thereof may at any time petition the

*Fuller v. Oregon*, 417 U.S. 40, 40 L. Ed. 2d 642, 94 S. Ct. 2116 (1974); *State v. Barklind*, 87 Wn. App. 814, 818, 557 P.2d 314 (1976). A sentencing court may impose repayment of court costs only if it determines that the defendant is or will be able to pay. RCW 10.01.160(3). Moreover, a defendant who has not willfully refused to pay may petition the court for remission of the obligation. RCW 10.01.160(4); *see also State v. Eisenman*, 62 Wn. App. 640, 646, 817 P.2d 867 (1991) ("if costs are imposed on a defendant who truly cannot pay, or later is unable to pay, that person will not be subject to incarceration.").

■ There is nothing in the statute, however, requiring that formal findings be entered to support the sentencing judge's decision to assess court costs. Given the protections contained in the statute itself, we are persuaded that the constitution does not require the judge to provide such added protection.

We recognize that we have previously taken inconsistent positions on this issue. *Compare State v. Earls*, 51 Wn. App. 192, 752 P.2d 402 (1988) *and State v. Hayes*, 56 Wn. App. 451, 783 P.2d 1130 (1989) *with State v. Eisenman*, 62 Wn. App. 640, 817 P.2d 867 (1991). However, we are persuaded that our most recent conclusion in *Eisenman* that the failure to enter findings is not a constitutional error which requires resentencing is the correct view. The court in *Eisenman* stressed that this is especially so when the amount in question is minimal, "so long as the imposition does not infringe on the right to counsel." *Eisenman*, 62 Wn. App. at 646.[2]

---

court which sentenced him for remission of the payment of costs or of any unpaid portion thereof. If it appears to the satisfaction of the court that payment of the amount due will impose manifest hardship on the defendant or his immediate family, the court may remit all or part of the amount due in costs, or modify the method of payment under RCW 10.01.170."

[2]We do not decide when or if the imposition of court costs infringes on the right to counsel. It is evident that a policy of recouping the costs of indigent defense attorney fees after conviction might well have a chilling effect on a defendant's exercising his Sixth Amendment rights. However, it is not evident,

## IV

■■ Although for somewhat different reasons, we also hold that findings of fact are not constitutionally required to support the trial court's imposition of the VPA under RCW 7.68.035. On its face, RCW 7.68.035 appears to lack the protections contained in RCW 10.01.160.[3] Thus, unlike the court costs statute, imposition of the VPA is mandatory and requires no consideration of a defendant's ability to pay. It also lacks specific language allowing the court, after default, to grant relief if the default is non-willful.

Nevertheless, in conformity with a number of federal circuits which have considered similar statutes, we find no constitutional infirmity with the mandatory assessment itself. We agree with the Second Circuit which, in rejecting a challenge to this type of assessment, stated:

> [c]onstitutional principles will be implicated . . . only if the government seeks to enforce collection of the assessments " 'at a time when [the defendant is] unable, through no fault of his own, to comply.' " . . .

> . . . It is at the point of enforced collection . . ., where an indigent may be faced with the alternatives of payment or imprisonment, that he "may assert a constitutional objection on the ground of his indigency."

*United States v. Pagan*, 785 F.2d 378, 381-82 (2d Cir.), *cert. denied*, 479 U.S. 1017 (1986). *See also United States v. Rivera-Velez*, 839 F.2d 8 (1st Cir. 1988); *United States v. Rising*, 867 F.2d 1255 (10th Cir. 1989); *United States v.*

---

nor do appellants explain how the assessment of court costs or the VPA would implicate a defendant's right to counsel.

[3]RCW 7.68.035 states, in relevant part:

"(1) Whenever any person is found guilty in any superior court of having committed a crime, except as provided in subsection (2) of this section [motor vehicle crimes], there shall be imposed by the court upon such convicted person a penalty assessment. The assessment shall be in addition to any other penalty or fine imposed by law and shall be one hundred dollars for each case or cause of action that includes one or more convictions of a felony or gross misdemeanor and seventy-five dollars for any case or cause of action that includes convictions of only one or more misdemeanors."

*Cooper*, 870 F.2d 586 (11th Cir. 1989); *Rhodes v. State*, 566 So. 2d 593 (Fla. Dist. Ct. App. 1990).

Furthermore, it is questionable whether constitutional principles would be violated even at the time of default and attempted collection. Although RCW 7.68.035 offers none of the safeguards normally associated with assessment statutes, other statutory provisions protect defendants who default on court-imposed financial obligations, including the VPA. RCW 9.94A.200 provides that a trial court, upon motion, shall give a defendant in violation of a condition of his sentence the opportunity to show cause why he should not be incarcerated for his violation. The court may treat a nonwillful violator more leniently. RCW 9.94A.200(2)(c). The contempt provision (RCW 7.21.010) also protects defaulting defendants by defining contempt of court as any "*intentional* . . . [d]isobedience of any . . . order . . . of the court". (Italics ours.) RCW 7.21.010(1)(b). These statutes provide adequate protection for the appellants should they later default.

In sum, we agree with and adopt the reasoning in *Pagan*. Additionally, we conclude that because RCW 9.94A.200 and RCW 7.21.010 protect defendants if their default is not willful, imposition of the VPA at the time of sentencing is not violative of the appellants' constitutional rights. Should it later become necessary because of a default, a trial court may consider factual issues at a hearing on the reasons for nonpayment of the mandatory assessment. RCW 9.94A.200.

## V

Finally, the appellants assert that even if findings of fact are not required, their sentencing judges failed to properly take account of their financial resources as required under RCW 10.01.160(3).

The appellants' principal contention is that because both of their sentencing judges waived the other assessments requested by the prosecutor, and adjudged them indigent for purposes of proceeding in forma pauperis on

appeal, the judges should have concluded that they were also unable to pay court costs and the VPA.

We disagree. First, as we have decided, the ability to pay is irrelevant to the imposition of the VPA at sentencing. With regard to the imposition of court costs, the trial judges complied with RCW 10.01.160 here since the record reflects that the sentencing judges were apprised of the appellants' financial situations. Moreover, while there was evidence that both appellants lacked financial resources, there was also evidence that tended to show that they would be able to pay. Lopez had been employed as a construction worker and was attempting to learn English. Curry had no prior convictions, and at sentencing, he spoke of his interest in "getting [his] act together." Also, both trial courts, as allowed by statute, ordered the community corrections officer to set the repayment schedules. The CCO has the authority to spread repayment of costs over a 10-year period. RCW 9.94A.145. Thus, the sentencing judges had ample reasons to conclude that the appellants would be able to make the minimal ($24 to $46) yearly payments over 10 years.

Affirmed.

FORREST and AGID, JJ., concur.

Reconsideration denied October 3, 1991.