[No. 26901-1-I.  Division One.  April 20, 1992.]

THE STATE OF WASHINGTON, *Respondent*, v. CARL DENNIS PHILLIPS, *Defendant*, REYNOLD O'KEEFE SCOTT, *Appellant*.

*Andrew P. Stanton* of *Washington Appellate Defender Association,* for appellant.

*Norm Maleng, Prosecuting Attorney,* and *Patricia Eakes, Deputy,* for respondent.

COLEMAN, J. — Reynold O'Keefe Scott appeals the judgment and sentence entered against him for possession of a controlled substance (cocaine) in violation of RCW 69.50-.401(d). Scott claims that the evidence was insufficient to convict him of possession, that the State's charging decision violated his state and federal equal protection rights, and that the trial court erred by imposing financial obligations upon him without considering his present or future ability to pay.

On October 21, 1989, Seattle Police Officers Cass and Koutsky were driving in a marked patrol car in a "high narcotics area" of Seattle. They noticed Scott and an unidentified woman briefly make contact while walking down the

street in opposite directions. The officers saw Scott and the woman "making a transaction with their hands", through which Scott received something in his left hand from the woman. The officers stopped the patrol car and got out to contact Scott, who was about 20 to 30 feet away.

According to Officer Cass, when Scott noticed the officers "he took his hand and put it up to his mouth as if he was putting something into" it. The officer was referring to Scott's left hand. Officer Koutsky asked Scott a question and Scott spoke "as if mumbling, as if he had something in his mouth." Scott attempted to swallow several times and finally did "complete the swallowing". Scott then stated, "No more left; I swallowed it all down." Officer Cass asked to see Scott's hands and observed what he believed to be cocaine residue. The officers arrested Scott, placed him in the back-seat of the patrol car (which Officer Koutsky inspected first), and transported him to the police precinct.

Officer Cass used cotton swabs to obtain separate samples of the residue from Scott's hands. After Officer Koutsky read Scott his *Miranda* rights, Scott said, "[M]an, you can't take me to jail for residue. . . . I just smoke the shit, I don't sell it. . . . I don't know the lady's name that sold me the rocks." Officer Koutsky inspected the backseat of the patrol car after taking Scott to the precinct and found a glass pipe with black residue. Scott was later charged by information with possession of cocaine, a controlled substance, contrary to RCW 69.50.401(d).

At trial, in addition to the two officers' testimony described above, a forensic scientist testified about the lab analyses of the cotton swabs and the glass pipe. With regard to the cotton swab with residue from Scott's right hand, the scientist was "able to detect the presence of a controlled substance, however, it was present in insufficient quantities for [her] to make a conclusive statement."[1] However, the scientist testified unequivocally that the cotton swab with

---

[1]On cross examination, the scientist agreed that, as to the substance detected on the cotton swab used on Scott's right hand, the substance "was present in insufficient quantities for conclusive identification".

the residue from Scott's left hand contained cocaine. The glass pipe contained cocaine, although the residue on the pipe weighed less than 0.1 gram.

At the close of the State's evidence, defense counsel moved to dismiss the possession charge for insufficiency of the evidence. He also moved to dismiss that charge without prejudice on the ground that the State charged the wrong crime and should have charged Scott with violating RCW 69.50.412(1), the statute proscribing the use of drug paraphernalia.[2] The trial court denied the motions because "no particular amount of cocaine need be shown to be in possession . . . in order to establish the crime, and that, indeed, trace elements are enough."

The jury found Scott guilty, and judgment and sentence were entered accordingly. Although the trial court did not evaluate Scott's ability to pay, the court imposed costs of $173 in court costs, $100 for "Crime Victim" (presumably the victim's penalty assessment (VPA)), $100 for the King County drug fund, $525 for recoupment of attorney fees, and $1,000 for VUCSA (violation of the Uniform Controlled Substances Act). The trial court set a payment schedule of $50 per month. No objection was made regarding the court's failure to determine Scott's ability to pay. Scott appeals.

We are asked to consider whether the trial court erred by imposing financial obligations upon Scott without considering Scott's present or future ability to pay. Scott, who was deemed indigent for purposes of obtaining counsel at trial and on appeal, raises this issue now for the first time. The State maintains that a trial court's failure to enter findings regarding a defendant's ability to pay is not an error of constitutional magnitude and, thus, Scott waived any claim of error by failing to raise the issue at trial.

---

[2] RCW 69.50.412(1) reads:

"It is unlawful for any person to use drug paraphernalia to plant, propagate, cultivate, grow, harvest, manufacture, compound, convert, produce, process, prepare, test, analyze, pack, repack, store, contain, conceal, inject, ingest, inhale, or otherwise introduce into the human body a controlled substance. Any person who violates this subsection is guilty of a misdemeanor."

■ We agree with the State. Issues raised for the first time on appeal generally will not be heard. *State v. Anderson*, 58 Wn. App. 107, 110, 791 P.2d 547 (1990). An exception to that rule exists when an issue of constitutional magnitude is initially raised on appeal. RAP 2.5(a)(3); *State v. Scott*, 110 Wn.2d 682, 686, 757 P.2d 492 (1988).

However, a trial court's failure to enter formal findings regarding a defendant's financial circumstances before imposing costs pursuant to RCW 10.01.160[3] is not a constitutional error that requires resentencing. *State v. Curry*, 62 Wn. App. 676, 680-81, 814 P.2d 1252 (1991);[†] *State v. Eisenman*, 62 Wn. App. 640, 810 P.2d 55, 817 P.2d 867 (1991). *Curry* drew the same conclusion as to the mandatory victim's penalty assessment under RCW 7.68.035 and adopted the view of the Second Circuit in *United States v. Pagan*, 785 F.2d 378, 381 (2d Cir.), *cert. denied*, 479 U.S. 1017, 93 L. Ed. 2d 719, 107 S. Ct. 667 (1986). *See Curry*, at 681-82. *Pagan* held that the

imposition of assessments on an indigent, per se, does not offend the Constitution. Constitutional principles will be implicated . . .

---

[3]RCW 10.01.160 reads:

"(1) The court may require a convicted defendant to pay costs.

"(2) Costs shall be limited to expenses specially incurred by the state in prosecuting the defendant. They cannot include expenses inherent in providing a constitutionally guaranteed jury trial or expenditures in connection with the maintenance and operation of government agencies that must be made by the public irrespective of specific violations of law. Expenses incurred for serving of warrants for failure to appear and jury fees under RCW 10.46.190 may be included in costs the court may require a convicted defendant to pay.

"(3) The court shall not sentence a defendant to pay costs unless the defendant is or will be able to pay them. In determining the amount and method of payment of costs, the court shall take account of the financial resources of the defendant and the nature of the burden that payment of costs will impose.

"(4) A defendant who has been sentenced to pay costs and who is not in contumacious default in the payment thereof may at any time petition the court which sentenced him for remission of the payment of costs or of any unpaid portion thereof. If it appears to the satisfaction of the court that payment of the amount due will impose manifest hardship on the defendant or his immediate family, the court may remit all or part of the amount due in costs, or modify the method of payment under RCW 10.01.170."

[†]Reporter's Note: The Supreme Court affirmed the decision of the Court of Appeals at 118 Wn.2d 911 (1992).

only if the government seeks to enforce collection of the assessments " 'at a time when [the defendant is] unable, through no fault of his own, to comply.' " *See United States v. Hutchings,* 757 F.2d 11, 14-15, (2d Cir.), *cert. denied,* [472] U.S. [1031], 105 S.Ct. 3511, 87 L.Ed.2d 640 (1985) (quoting *United States v. Brown,* 744 F.2d 905, 911 (2d Cir.), *cert. denied,* [469] U.S. [1089], 105 S.Ct. 599, 83 L.Ed.2d 708 (1984)) . . .

. . . It is at the point of enforced collection of the principal or additional amounts, where an indigent may be faced with the alternatives of payment or imprisonment, that he "may assert a constitutional objection on the ground of his indigency." *Hutchings,* 757 F.2d at 14-15.

(Citations omitted.) *Pagan,* at 381-82.

■ Consequently, Scott's failure to object when the trial court imposed court costs under RCW 10.01.160 amounted to a waiver of the statutory (not constitutional) right to have formal findings entered as to his financial circumstances. In addition, pursuant to *Curry* and *Pagan,* any constitutional issues that might be raised with regard to the other penalties imposed are not presently ripe for review. It is only when the State attempts to collect Scott's $50 monthly payment ordered by the trial court that such issues might arise. *See Curry,* at 682; *Pagan,* at 382. As *Curry* notes, the various statutory safeguards already in place in Washington might well eliminate any risk of a constitutional violation occurring even at the time of attempted collection. *See Curry,* at 682; RCW 9.94A.200; RCW 7.21.010. *See also State v. Bower,* 64 Wn.2d 808, 827 P.2d 308 (1992) (adequate safeguards exist to protect offenders from unconstitutional application of VPA and imposition of restitution).

The judgment and sentence of the trial court are affirmed.

The remainder of this opinion has no precedential value. Therefore it will be filed for public record in accordance with the rules governing unpublished opinions.

WEBSTER, A.C.J., and BAKER, J., concur.