[No. 26898-8-I. Division One. May 4, 1992.]

THE STATE OF WASHINGTON, *Respondent,* v. JOHN LOUIS WILLIAMS, *Appellant.*

*Andrew P. Stanton* of *Washington Appellate Defender Association,* for appellant.

*Norm Maleng, Prosecuting Attorney,* and *David Merrell, Deputy,* for respondent.

KENNEDY, J. — Appellant John Williams appeals his convictions of second degree possession of stolen property and of being a felon in possession of a firearm. We affirm in part and reverse and remand in part, for resentencing with respect to the imposition of court costs and attorney fees.

## I
## A
## Procedural Facts

The State filed an information charging appellant John Williams with second degree possession of stolen property, RCW 9A.56.160(1)(e) and .140(1) and with being a felon in possession of a firearm, RCW 9.41.040.

A jury trial, before Judge Bridge, began on July 10, 1990. At the close of trial, the jury returned verdicts finding Williams guilty as charged.

Sentencing took place before Judge Bridge on August 17, 1990. The court sentenced Williams within the standard range and ordered Williams to pay $525 in recoupment of attorney fees, $335.10 in court costs, and a victim penalty assessment (VPA) of $100.

## B
### Substantive Facts

In April 1990, James Burlingame was a bartender at the Turf Restaurant near Pike Place Market. In early April, Burlingame stated to several patrons that he was interested in buying a gun. Burlingame testified that on April 3, Williams told Burlingame that he had two guns, a .38 caliber and another gun, for sale. Williams said he would sell Burlingame the .38 caliber for $100. When Burlingame said he was interested, Williams left the bar and returned with a paper sack containing two guns. Burlingame examined the .38 caliber and asked Williams if it was "hot". Williams stated that the gun was "clean". Burlingame gave Williams $50 and agreed to give him $50 more the next evening.

Later that evening, Burlingame asked Officer Goff to run a check on the gun. A check on the serial number revealed that the gun had been stolen two nights previously from a home in Bellevue.

When he learned the gun was stolen, Burlingame called the Bellevue police and made arrangements with them for the arrest of Williams when he returned to collect the remaining $50. When Williams returned on April 4, Officer Goff arrested him and held him until the Bellevue police arrived.

## II
### A
### Ability of Williams To Pay Monetary Obligations

Williams argues that the trial court erred in ordering him to pay $525 in recoupment of attorney fees, $335.10 in court costs, and a $100 victim penalty assessment as part of his sentence without determining whether he had a present or future ability to pay.

Former RCW 10.01.160[1] authorizes a sentencing court to impose costs and attorney fees on a defendant if the

---

[1]Former RCW 10.01.160 provides in full:

"**10.01.160 Costs — What constitutes — Payment by convicted defendant — Procedure — Remission.** (1) The court may require a convicted defendant to pay costs.

"(2) Costs shall be limited to expenses specially incurred by the state in prosecuting the defendant. They cannot include expenses inherent in providing a constitutionally guaranteed jury trial or expenditures in connection with the

defendant is able to pay or will be able to pay. A sentencing court's determination of a defendant's resources and ability to pay is factual and is reviewed under the clearly erroneous standard. *State v. Baldwin*, 63 Wn. App. 303, 312, 818 P.2d 1116 (1991). The decision to impose recoupment of attorney fees is reviewed for an abuse of discretion as it is a decision requiring "the trial court to balance the defendant's ability to pay against the burden of his obligation." *Baldwin*, 63 Wn. App. at 312.

In *Baldwin*, this court held that "formal findings of fact are not required for imposition of recoupment of attorney fees at sentencing." (Footnote omitted.) 63 Wn. App. at 311. However, RCW 10.01.160(3) provides that at sentencing, "the court shall take account of the financial resources of the defendant and the nature of the burden that payment of costs will impose." Although formal findings are not required, RCW 10.01.160(3), which mandates that the sentencing court must be apprised of a defendant's financial situation, must be followed.

Here the report of proceedings at sentencing reflects that the sentencing court made no inquiry into the financial resources of Williams.[2] Compare *Baldwin*, 63 Wn. App. at

---

maintenance and operation of government agencies that must be made by the public irrespective of specific violations of law. Expenses incurred for serving of warrants for failure to appear and jury fees under RCW 10.46.190 may be included in costs the court may require a convicted defendant to pay.

"(3) The court shall not sentence a defendant to pay costs unless the defendant is or will be able to pay them. *In determining the amount and method of payment of costs, the court shall take account of the financial resources of the defendant and the nature of the burden that payment of costs will impose.*

"(4) A defendant who has been sentenced to pay costs and who is not in contumacious default in the payment thereof may at any time petition the court which sentenced him for remission of the payment of costs or of any unpaid portion thereof. If it appears to the satisfaction of the court that payment of the amount due will impose manifest hardship on the defendant or his immediate family, the court may remit all or part of the amount due in costs, or modify the method of payment under RCW 10.01.170." (Italics ours.)

[2]Not only did the sentencing judge make no inquiry into Williams' financial resources, but immediately after sentencing, and with respect to the question of an in forma pauperis appeal, the following colloquy took place:

"THE COURT: . . . Is Mr. Williams employed?

"MR. POWELL: No, Your Honor.

311 (noting that the sentencing court took into account a presentence report describing defendant as employable). Nor does the record on appeal contain any presentence report or other information from which a sentencing judge could follow RCW 10.01.160(3). Thus, we reverse and remand for resentencing on the issue of attorney fees.

With regard to the imposition of court costs, this court in *State v. Curry*, 62 Wn. App. 676, 680-81, 683, 814 P.2d 1252 (1991),[3] held that the failure of a sentencing court to enter findings is not a constitutional error requiring resentencing if the sentencing judge was apprised of the defendant's financial situation. *See also* RCW 10.01.160(3). In *Curry*, the record reflected that the sentencing court was aware of the defendants' financial situation before it imposed costs. 62 Wn. App. at 683. Here, unlike *Curry*, nothing in the record indicates that the sentencing judge had any knowledge of Williams' financial situation. Thus, we reverse and remand for resentencing on the issue of court costs.

█ RCW 7.68.035(1) requires the sentencing court to impose a contribution to the victim assessment fund.[4] The imposition of a VPA pursuant to RCW 7.68.035 is mandatory and requires no consideration of a defendant's ability to pay. In *Curry*, this court held that a defendant's ability to

---

"THE COURT: How long has it been since you have been employed?
"MR. WILLIAMS: About 15 years.
"THE COURT: Own a house?
"MR. WILLIAMS: No.
"THE COURT: A car?
"MR. WILLIAMS: No.
"THE COURT: Any major assets? Any property, other property?
"MR. WILLIAMS: No.
"THE COURT: I'll sign the order of indigency."

[3]The Supreme Court granted discretionary review of *Curry* by order dated February 6, 1992. [Reporter's Note: The Supreme Court affirmed the decision of the Court of Appeals at 118 Wn.2d 911 (1992).]

[4]RCW 7.68.035(1) provides in pertinent part: "[T]here shall be imposed by the court upon such convicted person a penalty assessment. The assessment shall be in addition to any other penalty or fine imposed by law and shall be one hundred dollars for each case".

pay "is irrelevant to the imposition of the VPA at sentencing."[5] 62 Wn. App. at 683; *see also State v. Suttle*, 61 Wn. App. 703, 714, 812 P.2d 119 (1991) (upholding a $100 VPA on the basis that it did not infringe on the right to counsel and that it was minimal); *State v. Eisenman*, 62 Wn. App. 640, 646, 810 P.2d 55, 817 P.2d 867 (1991) (noting that "[i]t is not even clear that the $100 victim assessment should be considered a 'cost', because it is imposed under a separate statute that is not concerned with recoupment of costs incurred by the State, RCW 7.68.035, and does not appear discretionary.") (Footnote omitted.) On the basis of *Curry*, we uphold the sentencing court's imposition of a $100 VPA.

A majority of the panel having determined that only the foregoing portion of this opinion will be printed in the Washington Appellate Reports and that the remainder shall be filed for public record pursuant to RCW 2.06.040, it is so ordered.

PEKELIS and BAKER, JJ., concur.

---

[5]The court determined that such holding does not violate constitutional principles as RCW 9.94A.200 and RCW 7.21.010 protect a defendant if his violation is not willful. *Curry*, 62 Wn. App. at 682.