IN THE COURT OF APPEALS OF THE STATE OF WASHINGTON
DIVISION ONE

| | | |
|---|---|---|
| STATE OF WASHINGTON, | ) | No. 76359-8-I |
| | ) | |
| Respondent, | ) | |
| | ) | |
| v. | ) | |
| | ) | |
| QUENTIN ROBERT YOUDERIAN, | ) | UNPUBLISHED OPINION |
| | ) | |
| Appellant. | ) | FILED: June 25, 2018 |
| | ) | |

VERELLEN, J. — Quentin Youderian pleaded guilty to one count of voyeurism and one count of second degree possession of depictions of a minor engaged in sexually explicit conduct. At sentencing, the court imposed a $500 victim assessment, a $100 biological sample (DNA) fee, and a $1,000 fine pursuant to RCW 9.68A.107. The trial court properly imposed these mandatory fees because the legislature has expressed these fees must be imposed regardless of a defendant's ability to pay.

Youderian's plea agreement did not include the statutorily mandated $1,000 fine. The absence of the mandatory fine in Youderian's plea agreement reflects the parties' mutual mistake. Because specific performance is not available in the case of mutual mistake, Youderian is not entitled to specific performance of the plea agreement.

At sentencing, the court also imposed various community custody conditions. The community custody condition that requires Youderian to hold employment only in a position where he always receives direct supervision should be stricken on remand because it is not crime related and it is unconstitutionally vague. And the community custody conditions prohibiting Youderian from accessing the Internet without approval from his community corrections officer and from using computer chat rooms should be stricken because they are not crime related.

But the court did not abuse its discretion when it imposed the community custody condition prohibiting Youderian from frequenting areas where minor children are known to congregate. This condition is not unconstitutionally vague because it does not provide discretion to Youderian's community corrections officer to define "places where minors congregate," and the condition provides an illustrative list of prohibited locations which gives sufficient notice to understand what conduct is proscribed.

Therefore, we affirm the conviction and remand with instructions to strike certain community custody conditions as directed in this opinion.

FACTS

Between January 2015 and June 2016, Quentin Youderian secretly filmed his girlfriend's nine-year-old daughter while she was changing. The State charged Youderian with voyeurism and second degree possession of depictions of a minor engaged in sexually explicit conduct.

On October 19, 2016, Youderian entered a guilty plea. As part of the plea agreement, the State recommended Youderian pay $800 in legal financial obligations. On January 6, 2017, the court sentenced Youderian to 15 months imprisonment and 36 months of community custody. The court imposed $1,600 in legal financial obligations. The court also imposed various community custody conditions.

Youderian appeals.

## ANALYSIS

### I. Legal Financial Obligations

Youderian challenges the trial court's imposition of legal financial obligations given his inability to pay.

"'The sentencing court's authority to impose court costs and fees is statutory.'"[1] When imposing legal financial obligations, the court must not "order a defendant to pay costs unless the defendant is or will be able to pay them."[2] But "for *mandatory* legal financial obligations, the legislature has divested courts of the discretion to consider a defendant's ability to pay when imposing those obligations."[3]

Here, the court imposed a $500 victim assessment, a $100 DNA fee, and a $1,000 fine pursuant to RCW 9.68A.107. Under former RCW 43.43.7541 (2015),

---

[1] State v. Mathers, 193 Wn. App. 913, 917, 376 P.3d 1163 (2016) (quoting State v. Cawyer, 182 Wn. App. 610, 619, 330 P.3d 219 (2014)) (citing RCW 10.01.160(3)), review denied, 186 Wn.2d 1015 (2016).

[2] Former RCW 10.01.160(3) (2015).

[3] State v. Lundy, 176 Wn. App. 96, 102, 308 P.3d 755 (2013).

a $100 DNA fee must be included in every felony sentence.[4] And under

RCW 7.68.035(1)(a), a $500 victim penalty assessment is imposed on "any person

[who] is found guilty in any superior court of having committed a crime." Similar to

the DNA fee and victim penalty assessment, the legislature requires the court to

impose a $1,000 fee on any person convicted of possession of depictions of a

minor engaged in sexually explicit conduct.[5]

Youderian argues the mandatory language in the above statutes "does not

override the requirement that the costs be imposed only if the defendant has the

ability to pay."[6] But Washington courts have consistently rejected this argument

and upheld the imposition of mandatory fees "without regard to finding the ability to

pay."[7]

---

[4] See also former RCW 43.43.754 (2015). The trial court waived the $200 criminal filing fee. Youderian argues, "Just as the court was free to waive the $200 criminal filing fee, it was free to waive the $1,000 fee." Reply Br. at 4. But Youderian does not provide any persuasive authority allowing the court to waive the criminal filing fee. The criminal filing fee "is required by RCW 36.18.020(2)(h), irrespective of the defendant's ability to pay." Lundy, 176 Wn. App. at 103 (citing State v. Curry, 62 Wn. App. 676, 680-81, 814, P.2d 1252 (1991), aff'd, 118 Wn.2d 911, 829 P.2d 166 (1992); State v. Thompson, 153 Wn. App. 325, 336, 223 P.3d 1165 (2009)).

[5] RCW 9.68A.107(1); RCW 9.68A.070.

[6] Appellant's Br. at 12.

[7] State v. Shelton, 194 Wn. App. 660, 673-74, 378 P.3d 230 (2016), review denied, 187 Wn.2d 1002 (2017); see also Mathers, 193 Wn. App. at 918 ("Washington courts have consistently held that a trial court need not consider a defendant's past, present, or future ability to pay when it imposes either DNA or [victim penalty assessment] fees."); State v. Clark, 191 Wn. App. 369, 374, 362 P.3d 309 (2015); Lundy, 176 Wn. App. at 102; State v. Kuster, 175 Wn. App. 420, 424, 306 P.3d 1022 (2013); Thompson, 153 Wn. App. at 336; State v. Williams, 65 Wn. App. 456, 460, 828 P.2d 1158, 840 P.2d 902 (1992)). No Washington case

Youderian also argues the imposition of the mandatory fees violates his rights to equal protection and substantive due process. Because the legislature has expressed that the trial court must impose certain mandatory fees regardless of a defendant's ability to pay, Washington courts have routinely rejected identical constitutional challenges.[8]

We conclude the trial court properly imposed the $100 DNA fee, the $500 victim penalty assessment, and the $1,000 fine.

## II. Plea Agreement

Youderian contends the State breached the plea agreement and he is entitled to specific performance.

Constitutional issues are reviewed de novo.[9] And we apply "an objective standard to determine whether the State breached a plea agreement."[10]

"A plea agreement functions as a contract in which the defendant exchanges his guilty plea for some bargained-for concession from the State:

---

has discussed the imposition of the $1,000 fine under RCW 9.68A.107, hence we apply the same rationale from cases addressing other mandatory fees.

[8] See Mathers, 193 Wn. App. at 927-29; Curry, 118 Wn.2d at 918; Lundy, 176 Wn. App. at 102-03.

[9] State v. MacDonald, 183 Wn.2d 1, 8, 346 P.3d 748 (2015); Id. at 9 ("In addition to contract principles binding the parties to the agreement, constitutional due process 'requires a prosecutor to adhere to the terms of the agreement' by recommending the agreed upon sentence.") (quoting State v. Sledge, 133 Wn.2d 828, 839, 947 P.2d 1199 (1997)); id. at 9 ("When the State breaches a plea agreement, it 'undercuts the basis for the waiver of constitutional rights implicit in the plea.'") (quoting State v. Tourtellotte, 88 Wn.2d 579, 584, 564 P.2d 799 (1977)).

[10] Id. at 8 (citing Sledge, 133 Wn.2d at 843 n.7).

dropping of charges, a sentencing recommendation, etc."[11] There are two possible remedies for an involuntarily guilty plea: withdrawal of the plea or specific performance of the plea agreement.[12] In the event of mutual mistake, the only remedy is withdrawal.[13] Mutual mistake occurs when the parties agree to a sentence that is contrary to law.[14] "The remedy of specific performance was intended to address the State's breach of a plea agreement, and is not appropriately extended to the mutual-mistake context."[15]

In State v. Barber, our Supreme Court considered "whether a defendant is entitled to specific performance when the result is to bind the sentencing court to impose a sentence that is contrary to law.[16] There, the State's recommendation made no mention of community custody, but Barber's felony driving under the influence offense carried a statutorily mandated 9 to 18 month term of community custody.[17] Our Supreme Court "[did] not construe the absence of any mention of community custody in the plea agreement as a promise from the State to recommend against community custody."[18] Rather, the court "recognize[d] [the

---

[11] State v. Barber, 170 Wn.2d 854, 859, 248 P.3d 494 (2011) (citing Sledge, 133 Wn.2d at 838-40; State v. Hunsicker, 129 Wn.2d 554, 559, 919 P.2d 79 (1996)).

[12] Id. at 855.

[13] Id. at 873.

[14] Id. at 859.

[15] Id. at 873 (citation omitted).

[16] Id. at 855-56.

[17] Id. at 857-58.

[18] Id. at 862.

absence] as reflecting the parties' mistaken understanding that community custody was not a component of Barber's sentence."[19]  Barber sought specific performance of the State's recommendation.  But the court held that "specific performance is not an available remedy in cases of mutual mistake."[20]

Here, Youderian entered into a plea agreement with the State on October 14, 2016.  After the court accepted Youderian's guilty plea but before sentencing, the State realized the agreement did not include the statutorily mandated $1,000 fine pursuant to RCW 9.68A.107.

Similar to Barber, we do not construe the absence of the mandatory fine in Youderian's plea agreement as a promise from the State to recommend against imposition of the fine.  Rather, we recognize the absence as reflecting the parties' mistaken understanding that the plea agreement contained all mandatory legal financial obligations.  At sentencing, the State conceded that Youderian was entitled to withdraw his guilty plea due to mutual mistake, Youderian declined, and elected to go forward with sentencing.

We conclude the State did not breach the plea agreement, and Youderian is not entitled to specific performance.

### III.  Community Custody Conditions

We review imposition of community custody conditions for abuse of discretion.[21]  A sentencing court abuses its discretion if its decision is "manifestly

---

[19] Id. at 862-63.

[20] Id. at 873.

[21] State v. Irwin, 191 Wn. App. 644, 656, 364 P.3d 830 (2015).

unreasonable."[22] Imposing an unconstitutional condition will always be manifestly unreasonable.[23]

### A. Condition 11 – Employment

Condition 11 requires Youderian to "[h]old employment only in a position where you always receive direct supervision."[24] Youderian contends condition 11 is not crime related and therefore exceeds the trial court's authority. The State argues the condition is crime related because it "provides an additional measure of assurance that the defendant will not have direct contact with minors in the course of employment."[25]

The trial court may require an offender to comply with "crime-related prohibitions."[26] The panel reviews the factual basis for crime-related community custody conditions under a "substantial evidence" standard.[27] Crime-related prohibitions must be "reasonably related" to the corresponding crime.[28] Courts will uphold crime-related community custody decisions when there is some basis for

---

[22] Id.

[23] Id. at 652.

[24] CP at 41.

[25] Br. of Resp. at 28.

[26] RCW 9.94A.703(3)(f).

[27] Irwin, 191 Wn. App. at 656.

[28] RCW 9.94A.030(10) ("crime-related prohibitions" are those "directly relate[d]" to the crime); Irwin, 191 Wn. App. at 656 ("directly related" includes "reasonably related"); State v. Warren, 165 Wn.2d 17, 32, 195 P.3d 940 (2008) ("[crime-related prohibitions] are usually upheld if reasonably crime related").

8

the connection.[29] Reviewing courts will strike community custody conditions when there is no evidence in the record that the circumstances of the crime related to the community custody condition.[30]

The State relies on State v. Kinzle to argue a community custody condition is not required to be factually identical to the defendant's criminal conduct.[31] In Kinzle, this court upheld a condition prohibiting Kinzle from dating women or forming relationships with families who have minor children.[32] A jury had convicted Kinzle of child molestation.[33] The court concluded, "Because Kinzle's crime involved children whom he came into contact through a social relationship with their parents, condition 10 is reasonably crime-related and necessary to protect the public."[34]

Although the State is correct in arguing that a condition does not have to be factually identical to the crime, the condition must be reasonably related to the individual's criminal conduct. Here, the condition requiring Youderian to hold employment only in a position where he receives direct supervision is not reasonably related to his criminal conduct. There is no evidence that Youderian's criminal conduct related to his place of employment. The record indicates that the

---

[29] Irwin, 191 Wn. App. at 656.

[30] Id.

[31] 181 Wn. App. 774, 326 P.3d 870 (2014).

[32] Id. at 785.

[33] Id. at 777.

[34] Id. at 785.

crimes were committed exclusively within Youderian's home.

Youderian also argues condition 11 is unconstitutionally vague because it insufficiently apprises him of prohibited conduct.

The guarantee of due process in the Fourteenth Amendment to the United States Constitution and article I, section 3 of the Washington Constitution requires that laws not be vague.[35] "The laws must (1) provide ordinary people fair warning of proscribed conduct, and (2) have standards that are definite enough to 'protect against arbitrary enforcement.'"[36] A community custody condition is unconstitutionally vague if it fails to do either.[37] "However, 'a community custody condition is not unconstitutionally vague merely because a person cannot predict with complete certainty the exact point at which his actions would be classified as prohibited conduct.'"[38]

Here, the parties dispute whether the term "direct supervision" is sufficiently clear to inform Youderian of the type of employment he may hold. "Supervision" is defined as "the act, process, or occupation of supervision."[39] "Direct" is defined in numerous ways, including "to show or point out the way for," "to regulate the activities or course of," and "to guide and supervise."[40] Even assuming these

---

[35] State v. Bahl, 164 Wn.2d 739, 752-53, 193 P.3d 678 (2008).

[36] Irwin, 191 Wn. App. at 652-53 (quoting id.).

[37] Id. at 653 (citing Bahl, 164 Wn.2d at 753).

[38] Id. (internal quotation marks omitted) (quoting State v. Valencia, 169 Wn.2d 782, 793, 239 P.3d 1059 (2010)).

[39] WEBSTER'S THIRD INTERNATIONAL DICTIONARY 2296 (2002).

[40] WEBSTER'S THIRD INTERNATIONAL DICTIONARY 640 (2002).

dictionary definitions are ascertainable to an ordinary person, the phrase "direct supervision" is not sufficiently definite to provide against arbitrary enforcement. The condition would require further definition from Youderian's community corrections officer to determine the type of employment Youderian may hold.[41]

We conclude condition 11 should be stricken on remand because it is not crime related and because it is unconstitutionally vague.

B. *Conditions 17 and 18 – Internet and Chat Rooms*

Condition 17 prohibits Youderian from "access[ing] the Internet on any computer in any location, unless such access is approved in advance by the supervising Community Corrections Officer or your treatment provider."[42] Condition 18 prohibits "use of computer chat rooms."[43]

Youderian contends conditions 17 and 18 are not crime related and therefore exceed the trial court's authority. The State argues the conditions are crime related because they "provide additional protections that the defendant will not have contact with minors on the Internet or in chat rooms" and they "ensure compliance with other conditions."[44]

---

[41] See Irwin, 191 Wn. App. at 654 (Washington courts have held "that community custody conditions that required further definition from [community corrections officers] were unconstitutionally vague.").

[42] CP at 41.

[43] CP at 42.

[44] Resp't's Br. at 30.

In <u>State v. O'Cain</u>, this court struck a condition prohibiting O'Cain from unapproved Internet access.[45]

> There is no evidence in the record that the condition in this case is crime related. There is no evidence that O'Cain accessed the Internet before the rape or that Internet use contributed in any way to the crime. This is not a case where a defendant used the Internet to contact and lure a victim into an illegal sexual encounter. The trial court made no finding that Internet use contributed to the rape.[46]

Similarly, there is no evidence Youderian's criminal conduct related to his use of the Internet or chat rooms. He used a recording device to film his girlfriend's daughter while she was changing and stored the videos on a hard drive. The State contends "[v]ideos and pictures can be uploaded on the Internet and can easily be shared."[47] But there is no evidence that Youderian uploaded the videos to the Internet. The State also argues "there is nothing to guarantee the Defendant will not have contact with minors in chat rooms."[48] Again, there is no evidence Youderian's use of chat rooms contributed to his criminal conduct.

We conclude conditions 17 and 18 should be stricken on remand because they are not crime related.

C. *Condition 6 – Places Where Minors Congregate*

Condition 6 provides "Do not frequent areas where minor children are known to congregate such as; schools, playgrounds, daycares, corn mazes,

---

[45] 144 Wn. App. 772, 774-75, 184 P.3d 1262.

[46] <u>Id.</u> at 775.

[47] Resp't's Br. at 30.

[48] <u>Id.</u>

children birthday parties, toy stores or the toy section in department stores, community swimming pools, youth sporting events, [and] arcades."[49]

Youderian argues condition 6 is unconstitutionally vague because it allows for arbitrary enforcement. The State contends the condition "is not void for vagueness because it provides specific location[s] and thus the defendant has adequate notice as to what is proscribed."[50]

In State v. Irwin, this court considered a similar community custody condition which provided that the defendant "not frequent areas where minor children are known to congregate, as defined by the supervising [community corrections officer]."[51] The court concluded that "[w]ithout some clarifying language or an illustrative list of prohibited locations . . . , the condition does not give ordinary people sufficient notice to 'understand what conduct is proscribed.'"[52]

And in State v. Magana, Division Three of this court considered a condition which provided "Do not frequent parks, schools, malls, family missions or establishments where children are known to congregate or other areas as defined by supervision [community corrections officer], treatment providers."[53] The court

---

[49] CP at 41.

[50] Resp't's Br. at 25.

[51] 191 Wn. App. 644, 649, 364 P.3d 830 (2015).

[52] Id. at 655 (quoting Bahl, 164 Wn.2d at 753).

[53] 197 Wn. App. 189, 200, 389 P.3d 654 (2016).

13

determined the condition "is problematic because it affords too much discretion to Mr. Magana's [community corrections officer]."[54]

Here, condition 6 is not subject to arbitrary enforcement because it does not provide discretion to Youderian's community corrections officer to define "places where minors congregate." And the illustrative list of prohibited locations gives Youderian sufficient notice to understand what conduct is proscribed.

We conclude the trial court did not abuse its discretion when it imposed condition 6 because it is not unconstitutionally vague.

Therefore, we affirm Youderian's conviction and remand with instructions to strike condition 11 requiring employment with "direct supervision" and to strike conditions 17 and 18 prohibiting unapproved Internet access and use of chat rooms.

WE CONCUR:

_____
Mann, A-C.J.

_____

_____
Trickey, J

---

[54] Id. at 201.

14