**NOTICE:   SLIP OPINION**
**(not the court's final written decision)**

The opinion that begins on the next page is a slip opinion.  Slip opinions are the written opinions that are originally filed by the court.

A slip opinion is not necessarily the court's final written decision.  Slip opinions can be changed by subsequent court orders.  For example, a court may issue an order making substantive changes to a slip opinion or publishing for precedential purposes a previously "unpublished" opinion.  Additionally, nonsubstantive edits (for style, grammar, citation, format, punctuation, etc.) are made before the opinions that have precedential value are published in the official reports of court decisions: the Washington Reports 2d and the Washington Appellate Reports.  An opinion in the official reports replaces the slip opinion as the official opinion of the court.

**The slip opinion that begins on the next page is for a published opinion, and it has since been revised for publication in the printed official reports.**  The official text of the court's opinion is found in the advance sheets and the bound volumes of the official reports.  Also, an electronic version (intended to mirror the language found in the official reports) of the revised opinion can be found, free of charge, at this website: https://www.lexisnexis.com/clients/wareports.

For more information about precedential (published) opinions, nonprecedential (unpublished) opinions, slip opinions, and the official reports, see https://www.courts.wa.gov/opinions and the information that is linked there.

For the current opinion, go to https://www.lexisnexis.com/clientfilewareports/.

IN THE COURT OF APPEALS OF THE STATE OF WASHINGTON

| | |
|---|---|
| STATE OF WASHINGTON,<br><br>Respondent,<br><br>v.<br><br>CHARLES GENE TATUM, III,<br><br>Appellant. | No. 82900-9-I (consolidated with No. 82901-7, No. 82902-5, No. 82903-3, & No. 82904-1)<br><br>DIVISION ONE<br><br>PUBLISHED OPINION |

SMITH, A.C.J. — Charles Tatum brings his second appeal following this court's earlier remand of his case for resentencing. He challenges for the first time the imposition of two mandatory legal financial obligations (LFOs), the Victim Penalty Assessment (VPA) and the DNA[1] collection fee, contending that they are unconstitutionally excessive under both the federal and state constitutions.

We disagree. Our state Supreme Court has previously determined that the VPA is constitutional, and this court has established that the DNA fee is constitutional. We therefore affirm.

**FACTS**

This is Tatum's second appeal following his guilty plea to five separate criminal cases in 2019. In his first appeal we reversed and remanded for the trial court to vacate his drug possession in light of State v. Blake, 197 Wn.2d 170, 481

---

[1] Deoxyribonucleic acid.

No. 82900-9-I/2

P.3d 521 (2021), recalculate his offender score accordingly, and strike his

nonrestitution interest and Department of Corrections (DOC) supervision fees.

State v. Tatum, No. 80795-1-I, slip op. at 1 (Wash. Ct. App. May 3, 2021)

(unpublished), https://www.courts.wa.gov/opinions/pdf/807951.pdf.  On remand,

the trial court resentenced Tatum in all five cause numbers.

Because Tatum is indigent, the court imposed only mandatory LFOs at his

original sentencing.  It did the same at resentencing.  It imposed a $500 VPA in

each of his five cause numbers and a single $100 DNA collection fee.

Tatum did not contest these LFOs in his original appeal.  He does so now.

**ANALYSIS**

Tatum contends that the imposition of $2,600 in LFOs constitutes

excessive fines in violation of the Eighth Amendment to the United States

Constitution and our state constitution's corresponding provision in article I,

section 14.  The State disagrees, but also asserts that this court need not

address Tatum's substantive claim because, first, he did not make it during his

prior appeal and, second, he invited whatever error may exist.  We conclude that

no invited error exists and the Washington State Supreme Court and this court

have already determined that these fees are not excessive.

Reviewability Under RAP 2.5(c)(1)

As a threshold question, we address whether, as the state urges, RAP 2.5

does not allow for review.

When a case returns to an appellate court after remand, "[t]he general rule

is that a defendant is prohibited from raising issues [in the] second appeal that

2

For the current opinion, go to https://www.lexisnexis.com/clients/wareports/.

No. 82900-9-I/3

were or could have been raised [in] the first appeal." State v. Mandanas, 163 Wn. App. 712, 716, 262 P.3d 522 (2011).  RAP 2.5(c) creates an exception to this rule.  It allows that "[i]f a trial court decision is otherwise properly before the appellate court, the appellate court may at the instance of a party review and determine the propriety of a decision of the trial court even though a similar decision was not disputed in [the] earlier review."  RAP 2.5(c).

But RAP 2.5(c)(1) "does not revive automatically every issue or decision which was not raised in an earlier appeal.  Only if the trial court, on remand, exercised its independent judgment, reviewed and ruled again on such issue does it become an appealable question."  State v. Barberio, 121 Wn.2d 48, 50, 846 P.2d 519 (1993).  That sort of re-review presumptively occurs when "the appellate court . . . remands for an entirely new sentencing proceeding."  See State v. Toney, 149 Wn. App. 787, 792, 205 P.3d 944 (2009).  However, resentencing alone does not necessarily constitute re-review.  In Barberio, for instance, the Supreme Court determined that no re-review had occurred when the trial court specifically stated in its oral ruling that it was not considering anew issues it had ruled on in the defendant's first sentencing.  121 Wn.2d at 51-52.

Here, we previously remanded for resentencing on each of Tatum's five causes.  Tatum, slip op. at 6.  Both VPA and DNA LFOs were readdressed on the record during his resentencing hearing.  The court was provided with and reviewed a number of new materials through that process, including sentencing memoranda, letters from Tatum and those in his life, certifications of his good behavior while in the custody of DOC, video interviews with Tatum's children,

3

other subsequent personal history, information about other changes to his offender score calculation, and statements from Tatum's loved ones. The court considered that new information and then gave a lengthy colloquy from the bench addressing it, but nonetheless confirmed to Tatum that it "does not change your sentence."

Tatum's resentencing hearing was not limited to a narrow review of only those issues previously remanded, but was a comprehensive reconsideration of the sentences in his cases. That process indicates the sort of independent re-review contemplated by Toney rather than the explicit denial of reconsideration present in Barberio. We exercise our discretion under RAP 2.5(c)(1) and choose to review Tatum's claim.

### Invited Error

The State next contends that the invited error doctrine bars Tatum from benefiting from an error he provoked below. We conclude the doctrine does not apply here. Tatum did not take the sort of affirmative action required to invite error and, as explained further below, there was no error to invite.

The invited error doctrine "precludes a criminal defendant from seeking appellate review of an error [they] helped create, even when the alleged error involves constitutional rights." State v. Carson, 179 Wn. App. 961, 973, 320 P.3d 185 (2014). So, for instance, where a defendant requests an erroneous jury instruction, they may not then appeal that instruction. State v. Studd, 137 Wn.2d 533, 546, 973 P.2d 1049 (1999). But only an error resulting from an affirmative, knowing, and voluntary act is invited. State v. Mercado, 181 Wn. App. 624, 630,

4

No. 82900-9-I/5

326 P.3d 154 (2014). We distinguish between a mere failure to object to an error and the sort of action that affirmatively assents to it; only the latter invites error. See, e.g. State v. Momah, 167 Wn.2d 140, 154-55, 217 P.3d 321 (2009). The State bears the burden to prove error was invited. State v. Thomas, 150 Wn.2d 821, 844, 83 P.3d 970 (2004).

Here, the State contends that Tatum, by agreeing before his original sentencing to recommendations imposing the appealed mandatory LFOs, invited any error that might exist. It argues that only if he had submitted a separate recommendation would he have not invited any potential error. The State provides as an independent ground for invitation defense counsel's request at his first sentencing hearing that only mandatory LFOs be imposed.

But this appeal arises out of Tatum's resentencing, not his original sentencing. The State, by focusing exclusively on that original proceeding, has not met its burden. Moreover, the record does not indicate that Tatum addressed imposition of the LFOs at issue during any part of his resentencing. His sentencing memorandum did not discuss LFOs, instead making an argument for an exceptional downward sentence. And at his resentencing hearing, defense counsel only requested that the court "waive any non mandatory fees and fines." Tatum's treatment of the issue in front of the trial court was more akin to failure to object to a potential error than affirmative invitation of one.

We therefore conclude that Tatum did not invite any error that may exist. But, as is explained below, we do not find error.

5

Excessive Fines

The core question in this appeal is whether either the VPA or DNA LFOs are excessive fines under the United States or Washington constitutions and unconstitutional when applied to indigent defendants.  Our state Supreme Court has determined that the VPA fee is constitutional, and we cannot reconsider the issue.  Precedent from this court establishes the same of the DNA fee.

Both our federal and state constitutions deny the government the power to issue excessive fines.  U.S. CONST. amend. VIII ("Excessive bail shall not be required, nor excessive fines imposed, nor cruel and unusual punishments inflicted."); WASH. CONST. art. 1 § 14 ("Excessive bail shall not be required, excessive fines imposed, nor cruel punishment inflicted.").  The federal amendment is applicable to the states by incorporation through the Fourteenth Amendment's due process clause.  Timbs v. Indiana, 139 S. Ct. 682, 686, 203 L. Ed. 2d 11 (2019).  For a fine to be unconstitutional under these clauses its purpose must be punitive—that is, it must be imposed as a punishment—and it must excessive.  City of Seattle v. Long, 198 Wn.2d 136, 162-63, 493 P.3d 94 (2021).

We first address the VPA fees.  RCW 7.68.035(1)(a) mandates that "[w]hen any person is found guilty in any superior court of having committed a crime . . . there shall be imposed by the court upon such convicted person a penalty assessment."  State v. Curry addressed challenges to the constitutionality of this statute and held that "the victim penalty assessment is neither unconstitutional on its face nor as applied to indigent defendants."  118

6

No. 82900-9-I/7

Wn.2d 911, 829 P.2d 166, 169 (1992). Curry's reasoning is vague; it does not state precisely what constitutional arguments it took into account. 118 Wn.2d at 166-69. The court of appeals case it affirmed was similarly imprecise, referencing only "constitutional considerations." State v. Curry, 62 Wn. App. 676, 677, 814 P.2d 1252 (1991). Nonetheless, the Supreme Court's concern was the constitutionality of the statute in light of indigent defendants' potential inability to pay. Curry, 118 Wn.2d at 168-69. We are bound in the face of this holding from our state Supreme Court to conclude that the VPA is constitutional as applied to Tatum. See State v. Gore, 101 Wn.2d 481, 487, 681 P.2d 227 (1984) (Supreme Court's decision on issue of state law binds all lower courts until that court reconsiders).[2]

---

[2] The State argues that the constitutionality of VPA fees was also addressed in two court of appeals decisions: State v. Humphrey, 91 Wn. App. 677, 959 P.2d 681 (1998) and In re Pers. Restraint of Metcalf, 92 Wn. App. 165, 963 P.2d 911 (1998). Metcalf concerned due process, ex post facto, double jeopardy, bill of attainder, and excessive fines challenges against provisions in chapter 72.09 RCW, concerning the Department of Corrections' ability to impose deductions on prisoners for costs of incarceration; it did not directly concern VPA fees. 92 Wn. App. at 170-71. In a passing reference to VPA fees, however, it characterized Humphrey as concluding that they are not punitive. Metcalf, 92 Wn. App. at 180.

The court of appeals decision in Humphrey ruled in the context of an ex post facto challenge, not an excessive fines challenge. 91 Wn. App. at 683, rev'd on other grounds by State v. Humphrey, 139 Wn.2d 53, 63, 983 P.2d 1118 (1999). But ex post facto analysis is guided by the multi-factor Mendoza-Martinez test, originating in the due process context and used to determine whether a statute is punitive on balance. Smith v. Doe, 538 U.S. 84, 97, 123 S. Ct. 1140, 155 L. Ed. 2d 264 (2003); Kennedy v. Mendoza-Martinez, 372 U.S. 144, 169, 83 S. Ct. 554, 9 L. Ed. 2d 644 (1963) (individual factors may be punitive while statute generally is not). In contrast, a statute only survives an excessive fines challenge if wholly remedial, without *any* punitive characteristics. Long, 198 Wn.2d at 161. The two tests are therefore different; a statue not found punitive under Mendoza-Martinez may still run afoul of the excessive fines

7

No. 82900-9-I/8

We turn next to the DNA collection fee. RCW 43.43.7541 mandates that "[e]very sentence imposed for [certain specified crimes] must include a fee of one hundred dollars unless the state has previously collected the offender's DNA as a result of a prior conviction." This court has previously found the DNA collection fee constitutional because its purpose is monetary, rather than punitive. State v. Brewster, 152 Wn. App. 856, 861, 218 P.3d 249 (2009); see also State v. Mathers, 193 Wn. App. 913, 920, 376 P.3d 1163 (2016). We decline to depart from our own precedent.[3] The fee continues to serve the purposes of funding collection of samples and maintaining operation of DNA databases, enabling use of DNA in criminal investigations, excluding those subject to investigation or prosecution, detecting recidivist acts, and facilitating identification of missing persons and unidentified human remains. See Brewster, 152 Wn. App. at 860 (listing purposes of the DNA fee).

Finally, we decline to conclude, as Tatum urges us to, that our state constitution provides greater protection than the federal constitution in this area. Our Supreme Court in State v. Gunwall, 106 Wn.2d 54, 61-62, 720 P.2d 808 (1986), articulated six nonexclusive criteria for courts to consider when asked to

---

clause. Austin v. United States, 509 U.S. 602, 610 n.6, 113 S. Ct., 125 L. Ed. 488 (1993).

The State's reliance on Metcalf and Humphrey is therefore misplaced.

[3] This case is not the first time we have recently rejected a request to reconsider Brewster and Mathers. See State v. Clement, No. 82476-7-I, slip op. at 3-4 (Wash. Ct. App. March 21, 2022) (unpublished), https://www.courts.wa. gov/opinions/pdf/824767.pdf. We cite to Clement not as precedent but as reference to our more recent treatment of the issue. See GR 14.1(c) ("Washington appellate courts should not, unless necessary for a reasoned decision, cite or discuss unpublished opinions in their opinions.").

find that state constitutional provisions are broader than their federal equivalents: (1) the language of the state constitution; (2) differences between parallel provisions of the state and federal constitutions; (3) state constitution and common law history; (4) preexisting state law; (5) differences in structure between the federal and state constitutions; and (6) matters of particular state interest or local concern. Gunwall analysis is not talismanic, but rather an interpretive tool meant to guide counsel and the courts. See Long, 198 Wn.2d at 159 ("When a party urges a different or more protective interpretation under our state constitution for the first time, we expect supportive briefing, particularly when the language of that provision is identical to the United States constitutional provision."). Our state Supreme Court recently declined the opportunity to decide whether our state constitution extends greater protections in this area than does the federal constitution. Long, 198 Wn.2d at 159.

The relevant provisions of the federal and state constitutions are nearly identical save in their third clauses: treatment of excessive punishment. Compare U.S. CONST. amend. VIII ("Excessive bail shall not be required, nor excessive fines imposed, nor cruel and unusual punishments inflicted.") with WASH. CONST. art. 1 § 14 ("Excessive bail shall not be required, excessive fines imposed, nor cruel punishment inflicted."). As a result, it is well established that our state excessive punishment clause is more protective than the federal excessive punishment clause. See, e.g. State v. Fain, 94 Wn.2d 387, 393, 617 P.2d 720 (1980) (life sentence for habitual offender guilty only of three minor crimes excessive punishment under state constitution). The court in Fain came

to this conclusion through reference to the text of our punishment clause, which excludes the word "unusual," and reference to discussions at the time of the provision's drafting indicating that the exclusion was deliberate. Fain, 94 Wn.2d at 393.

In contrast, the excessive fines clauses in the two constitutions are identical in their wording, and we have not been provided any historical information indicating an intent by our constitution's framers to deviate from the protections of the federal amendment as to that particular right.

Instead, Tatum's treatment of the issue largely boils down to two arguments: (1) the general difference between the goals and powers of the federal government and our state government mandates stronger protections; and (2) our state evinces widespread concern for the impact of fines and fees on indigent defendants, a state of affairs that urges greater constitutional protections. The first argument holds true for any right under the Washington constitution, and we see no reason it is particularly present here. See State v. Smith, 150 Wn.2d 135, 152, 75 P.3d 934, 941 (2003) (difference in structures will always favor independent analysis). Tatum's second point is well taken—the impact of fees and fines has appropriately received increasing scrutiny from both our Supreme Court and our legislature, and will likely receive more in the future. But we cannot conclude that a provision of our state constitution is more protective than its federal equivalent simply because it relates to a live policy debate, regardless of that debate's merit. And particularly in light of the recent decision in Long—in which the court explicitly addressed similar concerns by

10

reference to the federal constitution and declined to consider our state constitution—it is not appropriate for this court to interpret article I, section 14 as extending its protections farther than the Eighth Amendment's.

Finding no error, we affirm.

Smith, A.C.J.

WE CONCUR:

Mann, J.