# IN THE COURT OF APPEALS OF THE STATE OF WASHINGTON

STATE OF WASHINGTON,

Respondent,

v.

ROBERT CHRISTOPHER BOESE,

Appellant.

No. 86683-4-I

DIVISION ONE

UNPUBLISHED OPINION

BIRK, J. — Robert Boese appeals seven conditions of community custody imposed in his judgment and sentence, arguing that they are unconstitutional or otherwise unlawful. He also raises issues in his statement of additional grounds (SAG). We accept the State's concession that remand is necessary to amend the unconstitutionally vague condition requiring disclosure of "romantic relationships" by amending it to require disclosure of "dating relationships." In light of the agreed need for remand, we also direct the trial court to strike an unenforceable condition requiring Boese to pay the costs of crime-related counseling and medical treatment if ordered and a condition that is inconsistent with and superfluous to a separately entered no-contact order. Because this opinion directs the manner in which one condition is to be revised and the striking of two other conditions, the resulting remand is ministerial in nature and does not amount to re-sentencing. In all other respects, we affirm.

I

Robert Boese, his wife Briana Boese, and their two children lived in Oak Harbor.[1] On December 28, 2023, Briana reported to police that Robert had assaulted her with a firearm. The State charged Boese by amended information with several criminal counts: rape in the first degree, kidnapping in the first degree, assault in the first degree, and interfering with domestic violence reporting, all with domestic violation designations.

The jury found Boese guilty as charged. At sentencing, the court determined that the charges of rape in the first degree and kidnapping in the first degree arose from the same criminal conduct. The court then imposed an indeterminate sentence with a prison term of 129 months to life, with lifetime community custody. The court also imposed a total of 26 "mandatory" and "other" conditions of community custody.

Boese appeals.

II

A

Boese challenges seven of the community custody conditions imposed by the sentencing court. We review de novo the trial court's statutory authority to impose a particular community custody condition. State v. Armendariz, 160 Wn.2d 106, 110, 156 P.3d 201 (2007). We otherwise review community custody conditions for an abuse of discretion and will reverse a condition if it is manifestly

---

[1] Briana Boese is the mother of one of Boese's two children and the stepparent of the other.

2

unreasonable. State v. Nguyen, 191 Wn.2d 671, 678, 425 P.3d 847 (2018). Imposing an unconstitutional condition is manifestly unreasonable. State v. Bahl, 164 Wn.2d 739, 753, 193 P.3d 678 (2008).

Boese did not object to any of the conditions. A community custody condition may be reviewed for the first time on appeal if there is manifest constitutional error or the condition is illegal or erroneous as a matter of law, and the condition is ripe for review. State v. Peters, 10 Wn. App. 2d 574, 583, 455 P.3d 141 (2019) (quoting State v. Blazina, 182 Wn.2d 827, 833, 344 P.3d 680 (2015)). "If it is ineligible for review for one reason, we need not consider the other." Id.

1

Boese challenges as unconstitutionally vague mandatory condition 8, which directs him to "[r]emain within geographic boundary, as set forth in writing by the Community Corrections Officer [CCO]." The State does not dispute that the challenge to this condition is reviewable for the first time on appeal.

Between 2012 and 2025, this court issued eight unpublished decisions upholding community custody conditions meaningfully identical to the one Boese challenges.[2] But starting in 2024, we issued four more unpublished decisions

---

[2] State v. Akeem Ali Moore, No. 59282-7-II, slip op. at 1 (Wash. Ct. App. July 1, 2025) (unpublished) ("Remain within geographic boundaries, as set forth in writing by the Department of Corrections"), https://www.courts.wa.gov/ opinions/pdf/59282-7.25.pdf; In re Pers. Restraint of Strong, No. 59628-8-II, slip op. at 23 (Wash. Ct. App. May 6, 2025) (unpublished) ("[R]emain within geographic boundaries, as set forth in writing by the [DOC] Officer or as set forth with [Stay Out of Drug Area] order."), https://www.courts.wa.gov/opinions/pdf/D2%2059628-8-II%20Unpublished%20Opinion.pdf; In re Pers. Restraint of Delacruz, No. 55496-8-II, slip op. at 3-4 (Wash. Ct. App. Nov. 16, 2021) (unpublished) ("[G]eographical restrictions as ordered by CCO."), https://www.courts.wa.gov/opinions/pdf/D2%2055496-8-II%20Unpublished%20Opinion.pdf; In re Pers. Restraint of

3

striking down the same community custody condition as unconstitutionally vague.[3]
We conclude the challenged condition adequately defines the proscribed conduct
and under governing Washington law does not expose Boese to a risk of arbitrary
enforcement. We decline to follow the above-noted unpublished decisions holding
to the contrary.

All persons are guaranteed due process of law. U.S. CONST. amend. XIV,
WASH. CONST. art. I, § 3. Due process mandates that all "citizens have fair warning
of proscribed conduct." Bahl, 164 Wn.2d at 752. A community custody condition
is unconstitutionally vague when (1) it does not define the proscribed conduct with

_____

Rowe, No. 52575-5-II, slip op. at 1, 3 (Wash. Ct. App. Aug. 11, 2020) (unpublished) ("Remain within geographic boundary, as set forth in writing by the [CCO].") https://www.courts.wa.gov/opinions/pdf/D2%2052575-5-II%20Unpublished%20 Opinion.pdf; State v. Blake, No. 35601-9-III, slip op. at 7, 8-9 (Wash. Ct. App. Jan. 22, 2019) (unpublished) ("remain within prescribed geographical boundaries as directed by her CCO"), https://www.courts.wa.gov/opinions/pdf/356019_unp.pdf, reversed on other grounds, 197 Wn.2d 170, 481 P.3d 521 (2021); State v. Davis, No. 76747-0-I, slip op. at 8-10 (Wash. Ct. App. July 31, 2017) (unpublished) ("specified geographic boundary, to wit: per CCO"), https://www.courts.wa.gov /opinions/pdf/767470.PDF; State v. Landrum, No. 33812-6-III, slip op. at 21-22 (Wash. Ct. App. June 20, 2017) (unpublished) ("Remain within geographic boundary, as set forth in writing by the [CCO]"), https://www.courts.wa.gov /opinions/pdf/338126_unp.pdf; State v. Vanderveer, No. 42665-0-II, 2012 WL 5503563 at *1 n.4 (Wash. Ct. App. Nov. 13, 2012) ("remain within a geographic boundary set by the CCO").

[3] State v. Johnson, No. 86004-6-I, slip op. at 3-4 (Wash Ct. App. Apr. 21, 2025) (unpublished) ("remain within geographic boundaries, as set forth in writing by the Department of Corrections Officer or as set forth with [the] SODA order.") (footnote omitted), https://www.courts.wa.gov/opinions/pdf/860046.pdf; State v. Weeden, No. 85648-1-I, slip op. at 4-5 (Wash. Ct. App. Jan. 21, 2025) (unpublished) (same), https://www.courts.wa.gov/opinions/pdf/856481.pdf; In re Pers. Restraint of Bratcher, No. 39758-1-III, slip op. at 4-6 (Wash. Ct. App. Apr. 2, 2024) (unpublished) "Remain within geographic boundary, as set forth in writing by the [CCO]"), https://www.courts.wa.gov/opinions/pdf/397581_unp.pdf; In re Pers. Restraint of Alaniz, No. 39631-2-III, slip op. at 13-16 (Wash. Ct. App. Mar. 21, 2024) (unpublished) (same), https://www.courts.wa.gov/opinions/pdf/ 396312_unp.pdf.

sufficient definiteness so an ordinary person can understand what is proscribed or (2) it does not have sufficiently ascertainable standards to safeguard against arbitrary enforcement. State v. Wallmuller, 194 Wn.2d 234, 238-39, 449 P.3d 619 (2019). In deciding whether a term is unconstitutionally vague, the terms are not considered in a vacuum, rather, they are considered in the context in which they are used. City of Spokane v. Douglass, 115 Wn.2d 171, 180, 795 P.2d 693 (1990). If persons of ordinary intelligence can understand what the law proscribes, notwithstanding some possible areas of disagreement, the law is sufficiently definite. Bahl, 164 Wn.2d at 754.

Boese argues that the condition "fails to give [him] fair warning of the conduct that is forbidden, and it lacks ascertainable standards to protect against arbitrary enforcement." Indeed, "the more important aspect of vagueness doctrine 'is not actual notice, but the other principal element of the doctrine—the requirement that a legislature establish minimal guidelines to govern law enforcement.' " Kolender v. Lawson, 461 U.S. 352, 357-58, 103 S. Ct. 1855, 75 L. Ed. 2d 903 (1983) (quoting Smith v. Goguen, 415 U.S. 566, 574, 94 S. Ct. 1242, 39 L. Ed. 2d 605 (1974)). Language having "a standardless sweep" impermissibly "allows [police], prosecutors, and juries to pursue their personal predilections." Smith, 415 U.S. at 575. Quoting our unpublished decision in Alaniz, Boese argues the challenged condition fails to provide "any guidance or clarification regarding the geographic boundaries to be set such that an ordinary person would understand the conduct proscribed, nor does it otherwise define 'geographic boundary.' " In re Pers. Restraint of Alaniz, No. 39631-2-III, slip op. at 14-15

5

(Wash. Ct. App. Mar. 21, 2024) (unpublished), https://www.courts.wa.gov/opinions/pdf/396312_unp.pdf. He therefore contends that "the condition grants the CCO unfettered discretion to set geographic boundaries, risking arbitrary enforcement." Id. There are two flaws with this argument. The first is that it improperly conflates two different questions, and the second is that it overlooks the statutory framework that prevents any risk of arbitrary enforcement.

Starting with the first flaw, Boese's argument conflates the question whether a vague condition can be fairly enforced by deferring to the CCO's subjective assessment of what is meant to be prohibited (it cannot), with the different question whether state law may grant the Department of Corrections (Department) the authority to establish conditions in the first instance (here, it does). Boese's argument that the condition cannot defer to the CCO is premised on Bahl. In Bahl, the court rejected as impermissibly vague a community custody condition that the defendant not "possess or access pornographic materials, as directed by the supervising [CCO]." 164 Wn.2d at 743. Many courts had held such conditions to be unconstitutionally vague because the term "pornography" had "never been given a precise legal definition." Id. at 754. A range of popular fiction, advertisements, and poetry might or might not be considered pornography, and attempts to define the term were at best " 'entirely subjective.' " Id. at 754-55 (quoting United States v. Guagliardo, 278 F.3d 868, 872 (9th Cir. 2002)). And the meaning of pornography could not be derived from statutes defining " 'lewd matter' " or "obscenity." Id. at 757. Because the term "pornography" was inescapably vague, purporting to grant the CCO the authority to define it "only

6

makes the vagueness problem more apparent, since it virtually acknowledges that on its face it does not provide ascertainable standards for enforcement." Id. at 758. The vagueness in the court's prohibition against pornography could not be cured by inviting the CCO to supply their own, subjective interpretation of what the court had prohibited.

In State v. Irwin, we applied Bahl to a community custody condition directing the defendant not to " 'frequent areas where minor children are known to congregate, as defined by the supervising [CCO].' " 191 Wn. App. 644, 649, 654, 364 P.3d 830 (2015). We described the prohibition in Bahl as involving "the intractably undefinable term 'pornography.' " Id. at 654. We found a similar defect in excluding Irwin from places where " 'children are known to congregate.' " Id. It was "not immediately clear" whether that would exclude Irwin from a variety of public places "where there may be children." Id. We held the condition did not give ordinary people sufficient notice to understand what was proscribed "[w]ithout some clarifying language or an illustrative list of prohibited locations." Id. at 655. And as in Bahl, we said that deferring to the CCO to purport to define what the court had prohibited would "leave the condition vulnerable to arbitrary enforcement." Id.

Bahl and Irwin both explain that when the court sets a condition that imposes a vague restriction—to avoid "pornography" or places "where there may be children"—the problem is not cured by asking a CCO to try to define the court's intended prohibition. This hews to the traditional framework for the "void for vagueness" doctrine. The doctrine has been used to invalidate "two kinds" of

7

criminal laws, "laws that *define* criminal offenses and laws that *fix the permissible sentences* for criminal offenses." Beckles v. United States, 580 U.S. 256, 262, 137 S. Ct. 886, 197 L. Ed. 2d 145 (2017). Bahl and Irwin involved laws of the first kind. In both cases, the challenged condition too vaguely defined what the defendant was prohibited from doing.

But the condition at issue in this case does not purport to prohibit Boese from any place. It requires only that Boese follow a geographical restriction that is separately imposed. Boese's concern with the CCO's alleged "unfettered discretion" does not involve the same kind of discretion that was problematic in Bahl and Irwin. There, the problem was that the court had prohibited something, but it was unclear what, and a CCO's interpretation of what was prohibited would be no better than arbitrary. But in this case, the court has not imposed any geographical restriction, but only a requirement that if one is established it be followed. It is up to the CCO to impose any geographical restriction on Boese. Deferring to a CCO's statutory authority to set a condition in the first instance does not by itself implicate the void for vagueness doctrine. Void for vagueness cases have "never," for example, "suggested that a defendant can successfully challenge as vague a sentencing statute conferring discretion to select an appropriate sentence from within a statutory range, even when that discretion is unfettered." Beckles, 580 U.S. at 264. The void for vagueness doctrine prohibits putting a vague condition at a CCO's disposal that is amenable to arbitrary enforcement, but it does not by itself bar state law from granting the CCO the authority to set a proper condition in the first instance.

The second flaw with Boese's argument is that it assumes that the condition authorizes the CCO to set any geographical restriction because it "fails to provide 'any guidance or clarification regarding the geographic boundaries to be set.' " (Quoting Alaniz, No. 39631-2-III, slip op. at 14-15.) But the statutory framework sets parameters that limit the CCO's authority to impose conditions. By statute, a CCO can validly impose a condition only if it is "reasonably related" to at least one of either the crime of conviction, the offender's risk of reoffending, or the safety of the community. RCW 9.94A.704(7)(b). The disputed condition here is both consistent with and redundant of statutory provisions requiring that the Department set an appropriate geographical restriction and that Boese follow it.

At sentencing, Washington's Sentencing Reform Act of 1981 (SRA), ch. 9.94A RCW, authorizes the court to set certain conditions, and requires the court to set certain others. RCW 9.94A.703(1)-(3). One of the mandatory conditions the court must impose is to "[r]equire the offender to comply with any conditions imposed by the department under RCW 9.94A.704." RCW 9.94A.703(1)(b). The SRA then authorizes the Department to establish and modify additional community custody conditions based on the risk to community safety. RCW 9.94A.704(2)(a). The Department may not impose additional community custody conditions that are "contrary to those ordered by the court and may not contravene or decrease court-imposed conditions." RCW 9.94A.704(6). Because the Department "is not limited to imposing crime-related conditions, its authority to impose community custody conditions is actually broader than the sentencing court's authority." State v. Ortega, 21 Wn. App. 2d 488, 495, 506 P.3d 1287 (2022). And, like the court at

9

sentencing, the Department is mandated to impose some conditions. RCW 9.94A.704(3). Relevant here, the Department "shall at a minimum instruct" a defendant to "[r]emain within prescribed geographical boundaries." RCW 9.94A.704(3)(b).

When the Department sets a condition, it "shall notify the offender in writing." RCW 9.94A.704(7)(a). Within a specified time, an offender may request "an administrative review." RCW 9.94A.704(7)(b). A challenged condition shall remain in effect if the reviewing officer finds that it is "reasonably related to at least one of" either the crime of conviction, the offender's risk of reoffending, or the safety of the community. RCW 9.94A.704(7)(b). Thus, when the CCO's authority is placed in the appropriate statutory context, see City of Spokane, 115 Wn.2d at 180, a geographical restriction set by the CCO must reasonably relate to the statutory parameters of either the crime of conviction, risk of reoffense, or community safety. A void for vagueness problem is not present, because this amounts to authorizing the CCO to select an appropriate geographical restriction "from within a statutory range." Beckles, 580 U.S. at 264.

Washington decisions have generally given effect to this and similar statutory authority granted to correctional agencies. In re Pers. Restraint of Ansell, 1 Wn.3d 882, 902, 533 P.3d 875 (2023) (Indeterminate Sentencing Review Board (ISRB) authorized to impose conditions relating to crime of conviction, risk of reoffense, and community safety); In re Pers. Restraint of Winton, 196 Wn.2d 270, 276, 278, 474 P.3d 532 (2020) (ISRB authorized to set condition requiring permission to enter county where victims resided); State v. Houser, 30 Wn. App.

10

2d 235, 276, 544 P.3d 564 (Department authorized by RCW 9.94A.704(2)(a) to impose drug and alcohol conditions based on presentence risk assessment, even though drugs and alcohol had not contributed to the crimes of conviction), review denied, 3 Wn.3d 1015, 554 P.3d 1223 (2024); State v. McWilliams, 177 Wn. App. 139, 149-50, 154, 311 P.3d 584 (2013) (sentencing condition to follow "[c]onditions per [Department]; CCO" was not an impermissible delegation in light of the Department's authority to set conditions under RCW 9.94A.704(2)(a)). And the Supreme Court has recognized that CCOs must use discretion in enforcing conditions, State v. Johnson, 197 Wn.2d 740, 744, 487 P.3d 893 (2021), and that, in the case of the ISRB, the agency has discretion to impose conditions, Winton, 196 Wn.2d at 278.

Washington law directed the superior court to order Boese to follow any conditions the Department imposes, and Washington law requires the Department to "at a minimum" set a geographical restriction. RCW 9.94A.703(1)(b), 704(3)(b). The community custody condition directing Boese to follow a geographical restriction the Department sets is consistent with, and redundant of, these statutory provisions. And even though the challenged condition is redundant of the statutory requirements, it serves a purpose that is not redundant. By clarifying the sentencing court's intent that Boese follow a geographical restriction set by the Department, the sentencing court makes clear that in setting a geographical restriction the Department will not be imposing any "conditions that are contrary to those ordered by the court" nor "contravene[ing] or decreas[ing] court-imposed conditions." RCW 9.94A.704(6). The challenged condition imposes requirements

11

that are authorized and required by statute, subject to statutory parameters, and consistent with case law recognizing such statutory authority and recognizing that it vests reasonable discretion in correctional agencies. When placed in its statutory context, the challenged condition does not pose a risk of arbitrary enforcement.

Finally, the first prong of the void for vagueness test asks whether a condition defines the proscribed conduct with sufficient definiteness so an ordinary person can understand what is proscribed. To the extent Boese argues that the condition is unconstitutionally vague because it does not tell him what geographical areas to avoid, he is simply mistaken about what the condition proscribes. By itself, the condition does not impose any geographical restriction. It requires only that Boese follow a geographical restriction set by the CCO. An ordinary person can understand this requirement.

That is not to say that a CCO could impose an impermissibly vague geographical restriction. Were a CCO in Boese's case to attempt to impose the same geographical restriction we struck down in Irwin, for example, the restriction would fail administrative review under RCW 9.94A.704(7)(b). Irwin, 191 Wn. App. at 655. This is because if the Department attempted to impose a condition using inescapably vague terms, the condition could not be said to "reasonably" relate to the crime of conviction, the offender's risk of reoffending, or the safety of the community. RCW 9.94A.704(7)(b). And even if such a condition erroneously escaped administrative review, there would remain the backstop of postenforcement relief. See State v. Sansone, 127 Wn. App. 630, 635, 641, 643, 111 P.3d 1251 (2005) (reversing finding of community custody violation because

12

of unconstitutional vagueness and remanding for imposition of a compliant condition). Accordingly, the condition requiring Boese to "[r]emain within geographic boundary, as set forth in writing by the [CCO]" is not unconstitutionally vague.

2

Boese argues that mandatory condition 3, which prevents him from "consum[ing] controlled substances except pursuant to lawfully issued prescriptions" is unlawful because it contains no exception for the authorized use of medical cannabis. Because Washington's medical cannabis statute allows a health care professional to authorize the medical use of cannabis, RCW 69.51A.030(2)(a), Boese contends it would be absurd for the legislature to authorize an exception for the lawful use of more serious controlled substances but no corollary exception for cannabis. The State argues that even if this claim was preserved for review, it fails on its merits. We agree with the State.

Unless waived by the trial court, conditions of community custody must require an offender to "[r]efrain from possessing or consuming controlled substances except pursuant to lawfully issued prescriptions." RCW 9.94A.703(2)(c). "The [Washington State] Medical Use of Cannabis Act[, ch. 69.51A RCW,] did not implicitly or explicitly repeal the statutory classification of marijuana as a schedule I controlled substance." State v. Houck, 9 Wn. App. 2d 636, 646-47, 446 P.3d 646 (2019). Notably, "[d]octors are prohibited from issuing prescriptions for medical marijuana and are merely allowed to issue an 'authorization' for medical marijuana use." Id. at 647; RCW 69.51A.030(2)(a).

Thus, the Medical Use of Cannabis Act "does not supersede community custody conditions that trial courts 'shall order' under RCW 9.94A.703(2)." Id. at 650. The condition preventing Boese from "consum[i]ng controlled substances except pursuant to lawfully issued prescriptions" is unambiguously consistent with the community custody and medical cannabis statutes. See State v. Ervin, 169 Wn.2d 815, 823-24, 239 P.3d 354 (2010) (we interpret ambiguous statutory language to avoid absurd results); State v. Wilson, 125 Wn.2d 212, 217, 883 P.2d 320 (1994) ("Plain language does not require construction."). The trial court did not err in imposing this condition.

3

Boese next argues that other condition 4, which prohibits him from engaging "in a romantic relationship without first disclosing [his] status as a sex offender and the nature of [his] crimes(s)," and ordering him to disclose "romantic relationships" to his CCO and sexual deviancy treatment provider is unconstitutionally vague. In Peters, 10 Wn. App. 2d at 590, this court held that the phrase "romantic relationship" used in a community custody condition is unconstitutionally vague and remanded for the trial court to substitute the phrase "dating relationship." See Hai Minh Nguyen, 191 Wn.2d at 683 (holding that the term "dating relationship" is not unconstitutionally vague).

The State concedes Boese's challenge to this condition. We accept the State's concession and remand to the sentencing court to strike the word "romantic" from other condition 4 and replace it with the word "dating."

14

4

Boese challenges as constitutionally overbroad two conditions requiring him to comply with searches conducted by the Department:

> You must consent to DOC home visits to monitor your compliance with supervision.  Home visits include access for the purposes of visual inspections of all areas [of] the residence in which you live or have exclusive/joint control/access."  [other condition 14]
>
> . . . .
>
> . . . Submit to search of your person, vehicle, residence, or other personal property - such as but not limited to: cellular phones, tablets, computers; if there is a reasonable cause on the part of the Department employees to believe that you have violated your terms and conditions of supervision.  [other condition 18]

The State contends that other conditions 14 and 18 are not ripe for review.  We agree with the State.

A preenforcement challenge to a community custody condition is ripe for review if " 'the issues raised are primarily legal, do not require further factual development, and the challenged action is final.' " State v. Cates, 183 Wn.2d 531, 534, 354 P.3d 832 (2015) (internal quotation marks omitted) (quoting State v. Sanchez Valencia, 169 Wn.2d 782, 786, 239 P.3d 1059 (2010)).  In addition, "we must consider the hardship to the [defendant] if we refused to review [the] challenge on direct appeal." Sanchez Valencia, 169 Wn.2d at 789.

In Cates, our Supreme Court addressed the ripeness of a community custody condition requiring the defendant to "consent to [DOC] home visits to monitor your compliance with supervision.  Home visits include access for the purposes of visual inspection of all areas of the residence in which you live or have

15

exclusive/joint control/access, to also include computers which you have access to." 183 Wn.2d at 533. Because it was undisputed that the challenge was primarily legal and the action was final, the court "consider[ed] only whether further factual development [wa]s required and the risk of hardship to Cates if [it] decline[d] to address the merits of his challenge at th[at] time." Id. at 534-35. The court held that the challenge was not ripe because the "condition as written does not authorize any searches, and . . . the State's authority is limited to that needed 'to monitor [Cates's] compliance with supervision.' " Id. at 535. The court further held that the risk of hardship was insufficient to warrant preenforcement review because "compliance here does not require Cates to do, or refrain from doing, anything upon his release until the State requests and conducts a home visit." Id. at 536.

The same reasoning applies to other condition 18. It authorizes a search only "if there is a reasonable cause on the part of the Department employees to believe that you have violated your terms and conditions of supervision." And it does not compel Boese "to do, or refrain from doing" anything upon his release until the State conducts a search, so the risk of hardship does not justify review. Cates, 183 Wn.2d at 536. Thus, Boese's claim is not ripe for review.

Boese urges us to depart from Cates and hold that these conditions are ripe for review. He relies on the unpublished portion of a recent opinion from Division Two of this court, State v. Gililung, No. 57466-7-II, slip op. at 30-33 (Wash. Ct. App. July 30, 2024) (published in part), https://www.courts.wa.gov/opinions/pdf/D2%2057466-7-II%20Published%20Opinion.pdf. In Gililung, Division Two distinguished Cates and reached the merits of a constitutional challenge to the

16

same community custody condition. In so holding, Division Two expressly followed the reasoning of its previous unpublished opinion reaching the same conclusion. See State v. Franck, No. 51994-1-II (Wash. Ct. App. Feb. 4, 2020) (unpublished), https://www.courts.wa.gov/opinions/pdf/D2%2051994-1-II%20Unpublished%20 Opinion.pdf. However, in State v. Holmes, this court recently held that Franck is "not controlling, or persuasive on the issue of ripeness." 31 Wn. App. 2d 269, 293, 548 P.3d 570 (following Cates and holding that preenforcement challenge to condition requiring consent to home visits to monitor compliance with supervision was not ripe for review), review denied, 3 Wn.3d 1024, 556 P.3d 1111 (2024). We continue to follow Cates, and hold that other conditions 14 and 18 are not ripe for review.

5

Boese next challenges other condition 17, which requires him to "[p]ay the costs of crime-related counseling and medical treatment if required by [Briana Boese], if ordered." In State v. Land, this court accepted the State's concession that a condition ordering the defendant "to pay restitution to the victims in the form of payment for their counseling and medical treatment" must be stricken where the State did not seek restitution at sentencing, the court did not order restitution at that time, and the statutory time period requesting restitution had passed. 172 Wn. App. 593, 604, 295 P.3d 782 (2013). Here, as in Land, the condition is no longer enforceable because the trial court did not impose any restitution at sentencing and the 180 day deadline to do so has expired. RCW 9.94A.753(1).

The State argues that Boese's challenge is not ripe for review because the State has not attempted to enforce this provision. See State v. Phillips, 65 Wn. App. 239, 243-44, 828 P.2d 42 (1992) (challenge to sentencing condition imposing financial obligation not ripe until State takes action to collect fines). Given the State's concession that remand for correction of the judgment and sentence is appropriate to address other condition 4, we direct the trial court on remand to strike other condition 17.

6

Lastly, Boese challenges other condition 1, which requires him to "[h]ave no contact with [Briana Boese] for the statutory maximum of this crime, either direct or indirect." Another provision of Boese's judgment and sentence references a separately filed no-contact order barring him from contacting Briana "directly, indirectly, in person, or through others, by phone, mail, or electronic means, except for mailing or service of process of court documents through a third party, or contact by the defendant's lawyers." Boese argues that—unlike other condition 1—the no-contact order appropriately permits indirect third-party contact with Briana because she is the caregiver of his children and he has a fundamental constitutional right to parent. He contends that other condition 1 should be stricken on remand because it is "inconsistent with and superfluous to" the no-contact order provision.

The State argues that Boese's constitutional challenge to other condition 1 is too brief and conclusory to warrant review. See State v. Johnson, 179 Wn.2d 534, 558, 315 P.3d 1090 (2014) (undeveloped constitutional claims do not warrant

18

review. The State also contends that Boese's argument fails on its merits because the trial court did not abuse its discretion in prohibiting contact with Briana.

However, "[m]ore careful review of sentencing conditions is required where those conditions interfere with a fundamental constitutional right." State v. Warren, 165 Wn.2d 17, 32, 195 P.3d 940 (2008). A sentencing condition that infringes on the fundamental constitutional right to parent may only be upheld if the condition is "reasonably necessary to accomplish the essential needs of the State and public order" and is "sensitively imposed." Id. In addition, such conditions " 'must be narrowly drawn,' " and " '[t]here must be no reasonable alternative way to achieve the State's interest.' " State v. DeLeon, 11 Wn. App. 2d 837, 841, 456 P.3d 405 (2020) (alteration in original) (quoting Warren, 165 Wn.2d at 34-35).

Here, the no-contact order protects Boese's fundamental constitutional right to parent by making an exception for "mailing or service of process of court documents through a third party, or contact by the defendant's lawyers." Because other condition 1 contains no such exception, it allows Boese to be punished for constitutionally permitted conduct. We thus direct the trial court on remand to resolve the inconsistency by striking other condition 1 from the judgment and sentence.

III

Boese raises numerous issues in his SAG, including claims arising from his desire to proceed to trial with a different attorney, as well as multiple instances of prosecutorial misconduct and ineffective assistance of counsel. As discussed below, none require reversal.

19

A

On March 19, 2024, one week prior to the scheduled trial date, Boese's counsel Matthew Montoya filed a motion to withdraw based on a "complete breakdown in communication." This was so, Montoya explained, because Boese believed Montoya's representation had been ineffective and because Boese made statements to his mother in a jail call that "completely undermined the working relationship." Montoya said his firm attempted to accommodate Boese by reassigning the case to another attorney in the firm named Claire Highland, but the same breakdown in communication occurred and Boese indicated that he wanted an attorney from a different firm.

At the hearing on the motion to withdraw, Boese told the trial court that he wanted a new attorney but emphasized that he did not want to waive his right to a speedy trial. Boese asserted that Highland had agreed to travel from California to represent him during trial "but it seems she's been unable to get herself up here." Boese asserted that any delay should not count towards his 60 day speedy trial period because he relied on Highland's willingness to represent him at trial and her inability to do so was not his fault.

The following exchange then occurred:

> [TRIAL COURT:] So I want to make it crystal clear that when that attorney asks the Court for a continuance, you will be asked to essentially waive your speedy trial rights with respect to the time that it takes to get that attorney back up to speed and get another trial date; you understand that, don't you?
>
> [BOESE]: I'm being either forced to accept an attorney that I'm not comfortable with or I'm being forced to waive my speedy trial rights, and I really—I don't think that that's fair.

20

It's been two months now that I've been communicating with [Highland], developing the case, and now that she's not able to be here and because she's connected with [Montoya], I have to either give her up or give up my right to a speedy trial. That doesn't seem correct to me.

[TRIAL COURT]: Well, I'm not saying you have to give up your right to a speedy trial. I just want to make sure. After your first representation to the Court, you expressed that you were unwilling to waive speedy trial; that if the Court should grant this motion, you agreed that there was a breakdown in communication—that's understood—but that you did not wish to waive your speedy trial rights as part of this process if the Court should grant the motion.

So I want to make it clear. The Court is not forcing you into any position with respect to your rights and whether or not to accept one issue or one choice versus another. The Court has to decide whether your rights would be affected if I had an attorney representing you with whom you cannot communicate; and you've made it clear, I believe—and I'll give you another chance to express this—that you and [Montoya] do not communicate and that you do not wish to have him represent you in this trial that's coming up; is that a correct statement?

[BOESE]: So that is correct, but I did not have the knowledge that [Highland] was connected with him in the way that she is, and I've been told by her that she was going to be able to represent me since the very beginning.

When asked to articulate his dissatisfaction with Montoya, Boese said, "I happen to believe there are several aspects of this case can that can be brought to light in court that he should have known about if he was going to be my attorney, or at least asked me questions about, and I just don't feel that there is proper representation occurring here." The trial court then received telephonic testimony from Highland, who stated that she and Boese "have been in constant communication" and that "Boese and I have, on numerous occasions, covered the fact that, should his case go to trial, it would be tried by [Montoya]."

21

After evaluating several factors, including Boese's desire to be brought to trial as soon as possible, the nature of the communication breakdown, the reasons for client dissatisfaction, the court's assessment of counsel's performance, and the effect of substitution on the trial schedule, the court denied defense counsel's motion to withdraw. The jury convicted Boese as charged.

After trial and one week before his sentencing hearing, Boese moved to proceed pro se because he did not want Montoya to continue representing him. During colloquy, the court alerted Boese to the difficulties of self-representation and asked if he would prefer to be represented by a different court-appointed attorney. Boese said that "it would probably be wise." When the court asked Boese whether he intended to waive his right to speedy sentencing, Boese said he wished to discuss the matter with his new attorney. The court told Boese that "we need to make a decision about whether to allow you to proceed pro se today, if that is your request, or if you wish to waive your right to speedy sentencing." Boese replied, "[I]f I have to make a decision to waive my rights to a speedy sentencing or get stuck with [Montoya], then I'm stuck with [Montoya]." Boese then withdrew his motion to proceed pro se.

B

Boese argues that the trial court abused its discretion in denying counsel's motion to withdraw and Boese's request for new counsel. He contends that the trial court's decision forced him into an unfair "Hobson's Choice:" whether to forfeit his right to a speedy trial or proceed to trial with inadequate representation. He further contends that the trial court could have granted the motion without requiring

22

him to waive his speedy trial rights and that its failure to do so violated the "fundamental principles" clause of Washington's Constitution.[4] We disagree.

Once a criminal case has been set for trial, an attorney may not withdraw without "good and sufficient reason." CrR 3.1(e). We review the denial of a motion to withdraw for an abuse of discretion. State v. Hegge, 53 Wn. App. 345, 350, 766 P.2d 1127 (1989). Denial of a defendant's request for new appointed counsel is also reviewed for abuse of discretion. State v. Varga, 151 W.2d 179, 200, 86 P.3d 139 (2004).

While the Sixth Amendment guarantees all accused persons the right to assistance of counsel, it provides neither an absolute right to choose a particular court appointed counsel nor any right to have a "meaningful relationship" with appointed counsel. Holmes, 31 Wn. App. 2d at 279. "In evaluating Sixth Amendment claims, the focus is on the adversarial process and not on the accused's relationship with his lawyer." State v. Stenson, 132 Wn.2d 668, 743, 940 P.2d 1239 (1997) (Stenson I). A defendant "must show good cause to warrant substitution of counsel, such as a conflict of interest, an irreconcilable conflict, or a complete breakdown in communication between the attorney and the defendant." State v. Schaller, 143 Wn. App. 258, 267-68, 177 P.3d 1139 (2007).

"If the relationship between lawyer and client completely collapses, the refusal to substitute new counsel violates the defendant's Sixth Amendment right to effective assistance of counsel." In re Pers. Restraint of Stenson, 142 Wn.2d

---

[4] Washington Constitution article I, section 32 mandates that "[a] frequent recurrence to fundamental principles is essential to the security of individual right and the perpetuity of free government."

23

710, 722, 16 P.3d 1 (2001) (Stenson II). "Factors to be considered in a decision to grant or deny a motion to substitute counsel are (1) the reasons given for the dissatisfaction, (2) the court's own evaluation of counsel, and (3) the effect of any substitution on the scheduled proceedings." Stenson I, 132 Wn.2d at 734. Where a request for change of counsel is made on the eve of trial, a trial court may exercise its discretion to refuse to delay the trial to obtain new counsel. Stenson II, 142 Wn.2d at 732.

The facts present here do not constitute a violation of Boese's Sixth Amendment right to effective assistance of counsel. Boese expressed strong dissatisfaction with the quality of Montoya's representation, and Montoya's arguments in favor of withdrawal primarily reflected his frustration with representing a client under such circumstances. But a mere lack of rapport between attorney and client is not a sufficient basis for withdrawal, even where the attorney and the client both agree that withdrawal is preferable. Hegge, 53 Wn. App. at 350-51. As to counsel's abilities, the trial court stated that Montoya "is very competent, capable and experienced" and that it had "no concerns whatsoever" about his ability to properly represent Boese. Lastly, the court observed that substituting counsel would cause a "considerable" delay that was inconsistent with Boese's "desire to have this matter handled in a speedy and expeditious fashion." The trial court did not abuse its discretion in denying the motion to withdraw and substitute counsel. Because Montoya's continuing representation did not deprive Boese of his Sixth Amendment right to counsel, Boese was not forced to choose between competing constitutional rights.

24

Boese also argues that the trial court repeated the same mistake when it asked him whether he intended to waive his right to a speedy sentencing if the court appointed a new attorney for Boese. Boese contends that the court forced him to choose between his Sixth Amendment right to counsel and his right to speedy sentencing, thereby violating the "unconstitutional conditions doctrine."[5] But Boese had presented the court with a request to proceed pro se. After the court explained the challenges of self-representation and reminded him that substitution of counsel would cause delay, Boese chose to withdraw the motion and proceed to sentencing with Montoya. The court did not err in doing so.

C

Boese alleges several incidents of prosecutorial misconduct, none of which defense counsel objected to at trial. To prevail on a claim of prosecutorial misconduct, a defendant must demonstrate that the prosecutor's conduct was improper and prejudicial. State v. Emery, 174 Wn.2d 741, 756, 278 P.3d 653 (2012). But "failure to object to an improper remark constitutes a waiver of error unless the remark is so flagrant and ill intentioned that it causes an enduring and resulting prejudice that could not have been neutralized by an admonition to the jury." State v. Russell, 125 Wn.2d 24, 86, 882 P.2d 747 (1994).

Boese first argues that the prosecutor falsely told the jury that Briana said Boese's attack left her with a "bruised face and a swollen lip" that was also

---

[5] The unconstitutional conditions doctrine "holds that the government may not grant a benefit on the condition that the beneficiary surrender a constitutional right, even if the government may withhold that benefit altogether." Butler v. Kato, 137 Wn. App. 515, 530, 154 P.3d 259 (2007).

observed by both children and by law enforcement. He points out that no witnesses testified that Briana's face was bruised. But Briana testified that Boese had "grabbed [her] by the face" and "pushed" her "into the corner." Boese's son testified that immediately after the attack he saw "marks" or a "bump" on Briana's face, and Briana's daughter testified that "the side of her face was red." The prosecutor did not commit prejudicial misconduct by referring to Briana's injuries as a "bruise."

Boese next claims that the prosecutor "[went] out of his way to cover up the accuser's self contradicting testimony" and "tried to discredit" his testimony by "chang[ing] his arguments to match the testimony of the accus[e]r as her testimony changes." The prosecutor's closing argument appropriately reflected the testimony developed during direct and cross-examination.

Boese next asserts that the prosecutor inappropriately sought to sway the jury by repeating the words "rape," "kidnapping," "assault," and "gun/firearm/deadly weapon" during closing argument. Given the circumstances of the crime and the nature of the charges, such language was to be expected.

Boese also asserts that the prosecutor violated ER 404(b) by making a sarcastic remark about exhibit 9, a security video depicting a different incident. The court admitted the evidence for the purpose of demonstrating that Briana had a reason to be fearful. During closing, the prosecutor reminded the jury that the video "is only to be used to help you determine Briana Boese's state of mind when this was going on" and "is not introduced for any other purposes, such as to imply

that [Boese] is a bad guy or anything like that." The prosecutor's comment was correct and entirely proper, and was not prosecutorial misconduct.

D

Boese raises multiple claims of ineffective assistance of counsel. To succeed on an ineffective assistance of counsel claim, a defendant must show both deficient performance and resulting prejudice. Strickland v. Washington, 466 U.S. 668, 687, 104 S. Ct. 2052, 80 L. Ed. 2d 674 (1984). Performance is deficient if it falls below an objective standard of reasonableness. State v. Stenson, 132 Wn.2d 668, 705, 940 P.2d 1239 (1997). To demonstrate prejudice, a defendant must show a reasonable probability that, absent the deficient performance, the outcome of the trial would have differed. State v. Thomas, 109 Wn.2d 222, 226, 743 P.2d 816 (1987). If either element of the test is not satisfied, the inquiry ends. State v. Hendrickson, 129 Wn.2d 61, 78, 917 P.2d 563 (1996).

We strongly presume that counsel's performance was effective. State v. Bertrand, 3 Wn.3d 116, 130, 546 P.3d 1020 (2024). To rebut this presumption, a defendant bears the burden of showing that there was no possible legitimate trial tactic that would explain counsel's performance. State v. Grier, 171 Wn.2d 17, 33, 246 P.3d 1260 (2011).

Boese argues that counsel was ineffective for failing to move the court for relief under CrR 7.8(b)(1) in response to the court's error in presenting him with a a Hobson's Choice. As discussed above, the court did not err.

Boese next argues that counsel deficiently failed to point out the prosecutor's false statements about Briana's "bruised cheek" and inflamed the

prejudice of the jury by repeating the statement himself. In light of the testimony at trial regarding Briana's facial injuries, Boese demonstrates no resulting prejudice.

Boese next argues that defense counsel failed to highlight the accuser's "self-contradictory testimony" regarding the gun that was used in the crime and the nightstand Boese used to block the bedroom door. He further claimed that defense counsel made "pointless arguments" that undermined his testimony, that his lines of questioning did not make sense, and that counsel made comments that painted him in a bad light. He claims that the chance for prejudice was high because the evidence was speculative or at best circumstantial. The record does not support Boese's characterization of counsel's performance or of the strength of the evidence against him. Boese has not demonstrated that he received ineffective assistance of counsel.

Affirmed in part, reversed in part and remanded for the ministerial correction of the community custody conditions.

_Birk, J._

WE CONCUR:

_Díaz, J._        _Coburn, J._